**NONCONFIDENTIAL**
**Nos. 2013-1649, 2013-1653, 2013-1654**

# In the United States Court of Appeals
# for the Federal Circuit

BIAX CORPORATION,

*Plaintiff-Appellant,*

– v. –

NVIDIA CORPORATION,

*Defendant-Cross Appellant,*

&

SONY COMPUTER ENTERTAINMENT AMERICA, INC. and SONY
ELECTRONICS, INC.,

*Defendants-Cross Appellants.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CASE NO. 09-CV-1257
HON. PHILIP A. BRIMMER.

———————————

## PRINCIPAL AND RESPONSE BRIEF
## OF DEFENDANTS-CROSS APPELLANTS

———————————

Chris R. Ottenweller
Alex V. Chachkes
Donald E. Daybell
Brian P. Goldman
ORRICK, HERRINGTON
& SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Mark S. Davies
ORRICK, HERRINGTON
& SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

David Rokach
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-3169

*Attorney for Sony Computer
Entertainment America
LLC & Sony Electronics, Inc.*

*Attorneys for NVIDIA Corporation*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Cross Appellant NVIDIA Corporation

certifies the following:

1.    We represent NVIDIA Corporation.

2.    The name of the real party in interest (if the party named in the

caption is not the real party in interest) represented:  Not

applicable.

3.    NVIDIA has no parent entity and no publicly held entity owns 10

percent or more of NVIDIA Corporation's stock.

4.    The following law firms and partners or associates appeared for

the party or amicus now represented by me in the trial court or

agency or are expected to appear in this court:

ORRICK, HERRINGTON & SUTCLIFFE LLP:

Christopher R. Ottenweller
Alex V. Chachkes
Indra Neel Chatterjee
Mark S. Davies
Donald E. Daybell
Brian P. Goldman
Christina Marie Von der Ahe
Ulysses S. Hui
Richard S. Swope

i

KRAMER LAW, LLC

Harvey L. Kramer


BALLARD SPAHR, LLP

Roger P. Thomasch
Jonathan Bernhardt


Date: July 14, 2014             Respectfully submitted,


                                By: */s/ Mark S. Davies*
                                Mark S. Davies
                                ORRICK, HERRINGTON &
                                    SUTCLIFFE LLP
                                1152 15th Street, N.W.
                                Washington, D.C. 20005
                                (202) 339-8400

                                *Attorney for Defendant-Cross Appellant*
                                *NVIDIA Corporation*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Cross Appellants Sony Computer Entertainment America LLC (successor in interest to Sony Computer Entertainment America, Inc.) and Sony Electronics, Inc. certify the following:

1. We represent Sony Computer Entertainment America LLC and Sony Electronics, Inc. ("SONY").

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented: Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Sony Corporation and Sony Corporation of America.

4. The following law firms and partners or associates appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court:

iii

KIRKLAND & ELLIS LLP

Gregory S. Arovas, P.C.
David Rokach
Christian Chadd Taylor
Laura Hepburn
John Edwards
Aaron Goodman

FEATHERSTONE, PETRIE, DESISTO LLP

Bruce Featherstone
Matthew Collins
Courtney Levkulich


Date: July 14, 2014                Respectfully submitted,


                                   By: */s/ David Rokach*\*
                                   David Rokach
                                   Kirkland & Ellis LLP
                                   300 North LaSalle
                                   Chicago, IL 60654
                                    (312) 862-3169

                                   *Attorney for Defendants-Cross Appellants
                                   Sony Computer Entertainment America
                                   LLC and Sony Electronics, Inc.*



     \* Counsel for Sony has consented to NVIDIA's ECF filing of this
document.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. vii

STATEMENT OF RELATED CASES ........................................................ x

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ........................................................... 4

STATEMENT OF THE ISSUES ............................................................. 4

STATEMENT OF THE CASE ................................................................. 4

    A.    The Parties ........................................................................ 5

    B.    The BIAX Patents .............................................................. 7

    C.    The District Court Rejects BIAX's Claims, and This
           Court Affirms ................................................................. 12

    D.    The District Court Awards Attorney's Fees ........................ 21

    E.    *Octane Fitness* and *Highmark* ........................................... 25

SUMMARY OF THE ARGUMENT ........................................................ 26

STANDARD OF REVIEW ................................................................... 30

ARGUMENT .................................................................................... 32

I.    THE DISTRICT COURT DID NOT ABUSE ITS
    DISCRETION IN AWARDING ATTORNEY'S FEES
    UNDER SECTION 285 ................................................................ 32

    A.    This Case Is Exceptional Because BIAX Persisted
           Even After The Claim Construction Foreclosed Its
           Theory Of Infringement and Its Own Expert
           Acknowledged Defendants' Products Did Not
           Infringe. ....................................................................... 35

           1.    The district court correctly concluded that
                 BIAX's summary judgment strategy was to
                 "ignore" the claim construction. .......................... 37

|   | 2. | The district court correctly determined that this is an "exceptional case" warranting an award of attorney's fees. | 42 |

|   | 3. | BIAX's new "computer" argument is meritless. | 46 |

| B. | | The Exceptional Nature Of This Case Is Further Reinforced Because BIAX Had Little To Lose Through Pursuing Unreasonable Litigation. | 54 |

| C. | | A Protective Order Does Not Insulate A Litigant Against Responsibility for Its Agent's Misconduct | 56 |

| II. | | THE DISTRICT COURT'S REFUSAL TO AWARD FEES UNDER SECTION 1927 WAS PREMISED ON LEGAL ERROR AND SHOULD BE REVERSED. | 62 |

| A. | | The District Court's Factual Findings Compel A Fee Award Against BIAX's Attorneys Under Section 1927. | 63 |

| B. | | The District Court's Refusal To Award Fees Against BIAX's Attorneys Under Section 1927 Is Based On Legal Error. | 68 |

| CONCLUSION | | | 73 |

Material has been deleted from pages 12, 15-18, 50, and 51 of the nonconfidential Principal and Response Brief of Defendants NVIDIA Corporation and Sony Computer Entertainment America, Inc., and Sony Electronics, Inc.  This material is deemed confidential information pursuant to the Protective Order entered October 13, 2009. The material omitted from these pages contains confidential business information.

# TABLE OF AUTHORITIES

**Page(s)**

F<small>EDERAL</small> C<small>ASES</small>

*American Medical Sys., Inc. v. Biolitec,*
618 F.3d 1354 (Fed. Cir. 2010) ..............................................................49

*Becton Dickinson & Co. v. C.R. Bard, Inc.,*
922 F.2d 792 (Fed. Cir. 1990) ...............................................................42

*BIAX Corp. v. Apple Computer Inc., et al.,*
Case No. 01-cv-00601 (D. Del. 2001) .......................................................6

*BIAX Corp. v. Fujitsu Computer Sys. Corp., et al.,*
Case No. 06-cv-00364 (E.D. Tex. 2006) ...................................................7

*BIAX Corp. v. Intel Corp., et al.,*
Case No. 05-cv-00184 (E.D. Tex. 2005) ...................................................7

*BIAX Corp. v. Motorola, Inc., et al.,*
Case No. 10-cv-03013 (D. Colo. 2010) .....................................................7

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,*
393 F.3d 1378 (Fed. Cir. 2005) .............................................................35

*Certain Digital Processors, Components Thereof, and*
*Products Containing Same*
(*BIAX v. Texas Instruments, Inc.*), Inv. No. 337-TA-529
(U.S.I.T.C. 2004) ............................................................................... 6-7

*Certain Digital Processors, Digital Processing Systems,*
*Components Thereof, and Products Containing Same*
(*BIAX v. Phillips Semiconductors, B.V.*), Inv. No. 337-TA-
559 (U.S.I.T.C. 2005)...........................................................................7

*Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448 (Fed. Cir. 1998) .............................................................30

*Energy Recovery, Inc. v. Hauge,*
  745 F.3d 1353 (Fed. Cir. 2014) ..............................................31, 35, 46

*Eon-Net LP v. Flagstar Bancorp,*
  653 F.3d 1314 (Fed. Cir. 2011) ....................................................*passim*

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994) ....................................................................................32

*Hamilton v. Boise Cascade Express,*
  519 F.3d 1197 (10th Cir. 2008) ..................................................*passim*

*Highmark Inc. v. Allcare Health Management System, Inc.,*
  134 S. Ct. 1744 (2014) ..................................................................*passim*

*HTC Corp. v. IPCom GmbH & Co., KG,*
  667 F.3d 1270 (Fed. Cir. 2012) ..............................................................47

*Jeneric/Pentron, Inc. v. Dillon Co.,*
  205 F.3d 1377 (Fed. Cir. 2000) ..............................................................41

*Kilopass Tech., Inc. v. Sidense Corp.,*
  738 F.3d 1302 (Fed. Cir. 2013) ..............................................................59

*Kustom Signals, Inc. v. Applied Concepts, Inc.,*
  264 F.3d 1326 (Fed. Cir. 2001) ..............................................................42

*MarcTec, LLC v. Johnson & Johnson,*
  664 F.3d 907 (Fed. Cir. 2012) ....................................................*passim*

*Nightingale Home Healthcare v. Anodyne Therapy,*
  626 F.3d 958 (7th Cir. 2010) ....................................................................56

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
  134 S. Ct. 1749 (2014) ..................................................................*passim*

*Phonometrics, Inc. v. Westin Hotel Co.,*
  350 F.3d 1242 (Fed. Cir. 2003) ..................................................*passim*

*Phonometrics v. ITT Sheraton Corp.,*
  64 F. App'x 219 (Fed. Cir. 2003) ..........................................................70

*Pierce v. Underwood,*
   487 U.S. 552 (1988) ....................................................... 31

*Safir v. United States Lines, Inc.,*
   792 F.2d 19 (2d Cir. 1986) ............................................. 56

*SunTiger, Inc. v. Scientific Research Funding Group,*
   189 F.3d 1327 (Fed. Cir. 1999) ................................ 20, 41

*Superior Fireplace Co. v. Majestic Prods. Co.,*
   270 F.3d 1358 (Fed. Cir. 2001) ...................................... 45

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
   726 F.3d 1306 (Fed. Cir. 2013) ............................... *passim*

*Taurus IP v. DaimlerChrysler Corp.,*
   559 F. Supp. 2d 947 (W.D. Wis. 2008) ........................... 45

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
   208 F.3d 981 (Fed. Cir. 2000) ........................................ 62

## FEDERAL STATUTES

28 U.S.C. § 1295(a)(1) ...................................................... 4

28 U.S.C. § 1927 ..................................................... *passim*

35 U.S.C. § 285 ...................................................... *passim*

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. Proc. 11 ....................................................... 62

Fed. Cir. R. 36 ....................................................... *passim*

## MISCELLANEOUS

Restatement (Third) of Agency § 1.01, 2.10 (c) ............... 24, 58

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 28(a)(4) and 47.5, Defendants-Cross Appellants state that an appeal in this same civil action has previously been before this Court as Appeal No. 2012-1387.

# INTRODUCTION

This Court has repeatedly made clear that plaintiffs who persist in litigating meritless patent cases even after claim construction renders their allegations hopeless are liable for the attorney's fees of their defendants. *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012). Reinforcing this view, the Supreme Court recently articulated the substantive standard for granting attorney's fees in patent cases. *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). The inquiry should focus on whether the litigation is "exceptional" "considering the totality of the circumstances": "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

This is just such an exceptional case, as the district court found. Plaintiff BIAX's infringement claims were foreclosed from the moment the district court construed the claims to require functionality that BIAX's own expert conceded Defendants' products do not contain. Nevertheless, BIAX pushed onward with this litigation, requesting multiple extensions of discovery during which it took 16 fact

depositions, filed 15 pretrial motions, and served 22 third-party subpoenas. Then, BIAX opposed Defendants' motions for summary judgment by arguing that a critical requirement of the court's claim construction—the requirement BIAX's expert acknowledged Defendants' products could not meet—was actually "immaterial and irrelevant" to this case. A1901. The district court swiftly rejected BIAX's position, noting in disbelief that BIAX's entire argument against summary judgment depended upon ignoring the court's "unambiguous" claim construction. This Court affirmed under Rule 36.

The district court was well within its discretion to find that BIAX's blatant attempt to disregard the court's claim construction, and to persist in litigation even after its own expert's concession, rendered this case "exceptional." As a non-practicing entity, BIAX had little to lose by pressing forward with an unwinnable case and hoping for a settlement. The district court was justified in finding that it should be held accountable for the unreasonable litigation costs it imposed on defendants. Following *Highmark Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744 (2014), the district court's determination is owed deference and should be affirmed.

2

But BIAX did not act alone in this litigation lark.  BIAX's attorneys played a critical and indispensable role in BIAX's sanctionable conduct, vexatiously multiplying the district court proceedings by aggressively pursuing meritless infringement accusations.  Notwithstanding having participated in the claim construction hearings and representing BIAX's expert during his fatal testimony, they submitted and signed the papers that kept this litigation going for months more.  Through a fees award under 28 U.S.C. § 1927, BIAX's counsel should be held jointly and severally liable for the damage they caused.

Fee-shifting statutes play an essential role in "deterr[ing]" meritless litigation and "compensat[ing]" unreasonably accused defendants—a role that is particularly important to patent litigation, as the Supreme Court has recently acknowledged. *Octane Fitness*, 134 S. Ct. at 1755-56 & n.6.  The conduct of BIAX and its counsel here is a prime example.  The judgment should therefore be affirmed as to the grant of fees under § 285, and reversed as to the denial of fees under § 1927.

3

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1295(a)(1), because the parties timely appealed the district court's orders granting in part and denying in part Defendants' motions for attorney's fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927 in this patent dispute.

## STATEMENT OF THE ISSUES

1.  Whether the district court acted within its discretion in deeming this an "exceptional case," justifying an award of attorney's fees under 35 U.S.C. § 285, where Plaintiff-Appellant persisted in litigation despite "[l]acking a viable theory of infringement after the Court construed the claims." A11.

2.  Whether the district court erred in determining that the same misconduct justifying attorney's fees under § 285 did not also warrant holding Plaintiff-Appellant's attorneys jointly and severally liable for their role in "multipl[ying] the proceedings in [this] case unreasonably and vexatiously." 28 U.S.C. § 1927.

## STATEMENT OF THE CASE

The litigation underlying this appeal involved an unsuccessful claim of patent infringement brought by Plaintiff-Appellant BIAX

4

Corporation ("BIAX") against Defendants-Cross Appellants NVIDIA
Corporation, Sony Computer Entertainment America LLC, and Sony
Electronics, Inc. (collectively, "Defendants"). Previously, this Court
affirmed the district court's summary judgment of noninfringement in
an order under Rule 36. *See* No. 2012-1387. This appeal concerns only
the district court's resolution of Defendants' motions for attorney's fees,
which were based upon BIAX's decision to continue litigating this case
far beyond the point it could possibly have had any viable claim of
infringement. The district court granted fees against BIAX under 35
U.S.C. § 285, but denied fees against BIAX's counsel under 28 U.S.C.
§ 1927. The parties cross-appeal this split ruling.

### A.    The Parties

*NVIDIA*.  NVIDIA is a world leader in the development of visual
computing technology.  A1870.  In 1999, NVIDIA invented the graphics
processing unit ("GPU"), a revolutionary semiconductor chip that
enhances the display of graphics in electronic consumer products such
as laptop computers, PCs, and smartphones. *Id.* NVIDIA spent more
than $1 billion in the development of the GPUs that were at issue in
this case. A1280.

***Sony***.  Sony is a world leader in the development of consumer electronics, including the popular PlayStation®3 video game console. A1251-52.  The PlayStation®3 contains a graphics processor chip, known as the "RSX" chip, which is based on one of the NVIDIA GPUs that had been accused of infringement in this case.  A1937, ¶ 64.

***BIAX***.  BIAX, a non-practicing entity, is a company with two employees:  a president and general counsel.  *See* BIAX Br. 9.  BIAX is the successor-in-interest to the Morrison Computer Co. ("Morrison Computer"), a small computer company that faced financial collapse in the 1980s, never having developed a commercial product.  A880, A1076. BIAX acquired the assets of Morrison Computer, including a single patent application Morrison Computer had filed in 1985 relating to a parallel processing computer system.  A1076.  Over the next 16 years, BIAX prosecuted that application, and its children, eventually generating a family of related patents.  A86, at (62).

BIAX has filed at least six lawsuits on its family of patents against more than 14 technology companies.[1]  Most cases were settled

---

[1] *See BIAX Corp. v. Apple Computer Inc., et al.*, Case No. 01-cv-00601 (D. Del. 2001); *Certain Digital Processors, Components Thereof,*

before trial.  The only other BIAX case to reach judgment on the merits

was an International Trade Commission action in which the

Administrative Law Judge found no violation, holding BIAX's patents

invalid, not infringed, and unenforceable due to inequitable conduct in

view of BIAX's "significant intent to deceive" the Patent Office.  A769-

891.  The full Commission affirmed the no-violation determination and

took "no position" on the invalidity and inequitable conduct findings.

A1040-41.

## B.    The BIAX Patents

This case concerned two patents now owned by BIAX, U.S. Patent

No. 5,517,628 (the "'628 patent") and U.S. Patent No. 6,253,313 (the

"'313 patent").  Both patents derive from a 1985 original application

filed by Morrison Computer, which was eventually issued in 1989 as

---

*and Products Containing Same* (*BIAX v. Texas Instruments, Inc.*), Inv.
No. 337-TA-529 (U.S.I.T.C. 2004); *BIAX Corp. v. Intel Corp., et al.*, Case
No. 05-cv-00184 (E.D. Tex. 2005); *Certain Digital Processors, Digital
Processing Systems, Components Thereof, and Products Containing
Same* (*BIAX v. Phillips Semiconductors, B.V.*), Inv. No. 337-TA-559
(U.S.I.T.C. 2005); *BIAX Corp. v. Fujitsu Computer Sys. Corp., et al.*,
Case No. 06-cv-00364 (E.D. Tex. 2006); *BIAX Corp. v. Motorola, Inc., et
al.*, Case No. 10-cv-03013 (D. Colo. 2010).

U.S. Patent No. 4,847,755.  These patents have a common specification.
A653-54.

*Background technology*.  BIAX's patents address a particular
architecture for executing instructions in a computer system.  By way of
background, certain instructions generate status information, known as
"conditions" or "condition codes."  A "condition code" conveys
information about the results of an executed instruction.  A107, col.
8:46-52; A275, col. 8:49-55; A646-47, ¶ 13.  This status information is
used by processors during subsequent execution of other instructions.  A
condition code "register" is a memory structure for storing condition
codes, such that the information is accessible to a processor element
much more quickly than if it were stored in other memory elsewhere in
the system.  A111, col. 16:8-35; A279, col. 16:17-44; A647, ¶ 14.

*The claimed invention: shared access to registers*.  Morrison
Computer claimed to have solved a "fundamental problem" in
computing:  delays caused by "the large amount of communication
overhead in moving data between the processors" in a system requiring
"parallel computation through use of a number of processor elements."
A104, col. 1:32-34; A272, col. 1:33-35.  A105, col. 3:16-18; A273, col.

3:17-19. Its solution was to streamline the communication among

processors with an architecture in which the "*processor elements can*

*access any storage resource contained in any context file* through total

coupling of the processor element to the *shared resource . . . .*" A105,

col. 4:21-26 (emphasis added); A273, col. 4:23-28 (same); *see also* A105,

col. 3:26-28; A273, col. 3:26-29.

"[T]he system architecture of the present invention" is shown in

Figure 6:



**FIG. 6**

A89, fig. 6; A110, col. 14:30-31; A270, fig. 6; A278, col. 14:38-39. Each

"CC FILE" in box 660 is a collection of condition code registers; each

"PE" in section 640 is a processor element. A110, col. 14:36-39; A278,

col. 14:44-47. The arrows interconnecting each of these registers to

each processor element illustrate that "any processor element 640 can access any register file or condition code storage in any context (as defined hereinbelow) file 660." A110, col. 14:47-50; A278, col. 14:51-55.

Morrison Computer's architecture for providing "shared access" to condition code registers allowed the alleged invention to overcome the shortcomings of the prior art. The specification emphasizes that the "particular configuration of the files 660 illustrated in FIG. 6 is *unique under the teachings of the present invention*," and that "under the teachings of the present invention, each processor element can be totally coupled . . . to any shared register in files 660." A111, col. 15:39-42 & col. 16:25-28 (emphasis added); A279, col. 15:48-51 & col. 16:34-37 (same). Following rejections for the obviousness of its claims, BIAX responded by repeatedly emphasizing *shared* access to condition code registers and condition storage as a distinction between the prior art and its invention. *See* A720-23. BIAX later reaffirmed these disclaimers during reexamination before the Patent Office. *See* A744, ¶ 12, A756-57, ¶ 11.

The asserted '628 claims each require "condition code registers" while each of the asserted '313 claims requires "condition storage." All

parties treated condition storage synonymously with condition code registers for purposes of BIAX's infringement assertions. Similarly, the '628 patent refers to "processor elements," while the '313 patent refers to a more general term, "first circuit." The district court noted that "first circuit," as construed, encompasses "processor element." A1161. These terms were also treated synonymously for purposes of BIAX's infringement assertions.

The relevant claim language from Claims 1 of the '628 patent is representative. It recites:

> 1. A computer comprising:
>
> a general purpose register file comprising at least two general purpose registers;
>
> a condition code register file distinct from said general purpose register file, having a plurality of addressable condition code registers, each condition code register for representing a condition code value as a small number of bits summarizing the execution or result of a previously-executed instruction;
>
> a processor element configured to execute instructions, including condition-setting instructions that each produce a condition code value for storage in one of said condition code registers;
>
> . . . .

11

**Confidential**
**Material Omitted**

A287, col. 45:63-46:8.

## C. The District Court Rejects BIAX's Claims, And This Court Affirms

*BIAX's infringement allegations*.  BIAX alleged that NVIDIA's NV40 and NV50 families of GPUs and Sony's RSX GPU in PlayStation®3 consoles infringed its patents.  A351-53 (identifying Defendants' "graphics systems"); A12,141, A1370 (BIAX's infringement contentions identifying Sony's [["▮▮▮▮▮▮▮▮▮▮"]]).  Each of the accused GPUs contains "shaders"—circuits that perform computations to determine how images should be shown on the user's screen—or equivalent circuits called "streaming multiprocessors."  A2100, ¶ 4; A2101, ¶ 7; A2102, ¶ 15.  The chips each contain multiple shaders or streaming multiprocessors.  A2100, ¶ 4; A2101, ¶ 9; A2102, ¶ 16. Within each chip, however, these individual shaders do not operate independently.  Rather, [["▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."]]  A1235 (statement of BIAX's technical expert); A1281-82, ¶¶ 6, 8 (BIAX admission to A7963-64, ¶¶ 6, 8).  BIAX initially alleged that entire chips (or "graphic systems") infringed the patents.  A351-53; A1370.

***Claim construction***.  The district court construed the terms "condition code register" in the '628 patent and the term "condition storage" in the '313 patent.  A1167-68.  Defendants had asked the district court to add the phrase "*shared* by all . . . processor elements" to its constructions.  The court declined to do so because it was concerned that Defendants' proposed phrase, which contained the plural word "elements," may be interpreted to impose a *requirement* of multiple processor elements for all claims, even those that refer to only "[a] processor element."  A1157.  The district court made clear, however, that whatever number of processor elements there are, each "processor element [must be] able to access *any* condition code register."  *Id.* (emphasis added).  The court reasoned, "In the event there is only one processor element, that processor element is capable of accessing any of the condition code registers for storing condition code values.  In that event, the register is not shared by all processor elements since there would just be one."  *Id.*  But where, in fact, "multiple processor elements" are present, sharing is required.  *Id.*

Similarly, in construing "condition storage" in the '313 patent, the district court stated:

> [T]o the extent there is any dispute over whether,
> despite the foregoing, condition code storage
> locations are *shared by all* processor elements,
> the Court rules that they are.

A1164 (emphasis added).

After it issued its *Markman* order, the district court commented

further on the "shared access" requirement. Defendants had moved to

have the court's sharing requirement formally added to the claim

constructions. The district court found that its prior ruling was

unambiguous and needed no further clarification, and thus denied the

motion. A1204. In its ruling, the district court reiterated its holding

that the patents require that each processor element be capable of

accessing *any* of the condition code registers, whether there is one

processor element or multiple:

> [I]n the event there is only one processor element,
> that processor element is capable of accessing any
> of the condition code registers for storing
> condition code values. . . . [T]o the extent there is
> any dispute over whether, despite the foregoing,
> condition code storage locations are shared by all
> processor elements, the Court rules that they are.

A1203-04. And in addressing Defendants' concern that BIAX might

contend that the condition code registers need *not* be shared by all

processor elements, the district court concluded by noting that "[t]he

14

Confidential
Material Omitted

Court, therefore, sees little risk that plaintiff will attempt to argue at trial that processor elements are not able to access any condition code registers or condition storage locations." A1204.

**_BIAX's new infringement theory after claim construction_**. Following claim construction, BIAX introduced a new theory: that individual shaders—the individual components of the unified system on each chip—could be viewed in isolation, such that there were no other processors to which any sharing requirement would apply. A1950-52, ¶¶ 155, 157-158; A1953-55, ¶¶ 185-188; A1956-58, ¶¶ 209, 210, 213; A1941-42, ¶¶ 74, 76; A1943-44, ¶¶ 101, 103; A1947-49, ¶¶ 128, 130. Even then, BIAX did not account for the district court's requirement that all condition code registers be "shared by all" processor elements. A1204.

**_Admissions of BIAX's expert_**.  BIAX's experts extensively reviewed the accused products after the claim construction.  A10,232-33, A10,235-36, A10,239.  BIAX's technical expert, Dr. Edward Davidson, then admitted at his deposition that the accused products lack shared access to condition code registers:



Confidential
Material Omitted



]]

A10,223-24; *see also* A10,217-20.

Most relevant, Dr. Davidson conceded that there is no

infringement if, as the district court had already explicitly found,

shared access to condition code registers is required:

> Q.  Do we agree, then, that if there is a
> requirement that processor elements need to
> access any of the condition code registers or
> condition code storage locations in the chip, then
> RSX doesn't infringe?
>
> A.  It doesn't infringe that requirement, no.  But
> there is no such requirement.

A5 (quoting A10,222).

***Prolonged discovery***.  BIAX proceeded to press its case,

notwithstanding that its expert's opinion as to infringement depended

16

Confidential
Material Omitted

upon his rejection of the district court's "unambiguous[]" claim
construction.  A1900.

Between the district court's claim construction order and
summary judgment, 20 months of protracted litigation required
Defendants to:  (a) prepare for and defend 16 fact depositions of
Defendants' employees; (b) respond to BIAX's seven motions to compel
(Dkt. Nos. 234, 235, 359, 383, 499, 564, 618), one motion to strike (Dkt.
No. 712), three objections to recommendations of the magistrate judge
(Dkt. Nos. 313, 410, 879), and four *Daubert* motions; (c) participate in
prolonged expert discovery; and (d) cope with 22 subpoenas to Sony's
third-party developers seeking source code for hundreds of games.  To
accommodate these discovery demands and many motions, BIAX
requested and obtained a series of extensions of the period for discovery,
further driving up the costs of this litigation.  Dkt. Nos. 343, 389, 535.

***Summary judgment.***  Discovery finally closed, and Defendants
moved for summary judgment of noninfringement because the evidence
showed that Defendants' products did not satisfy the requirement of
shared access to condition code registers.  A7960-80, A1442-64.  Indeed,
BIAX admitted that [["

Confidential
Material Omitted



,"]] and

that [[" 

]] A7963, ¶¶ 4-5, A1281, ¶¶ 4-5; *see also*

A1445, ¶¶ 5-8, A1463, ¶¶ 5-8.

BIAX contended, however, that the district court had *not* actually

held that the patents [["

"]] A1468-69. BIAX asserted that the district court's claim

construction rulings applied only to Claim 2 of the '628 Patent and

Claim 1 of the '313 Patent—neither of which had even been asserted by

BIAX at the time of claim construction proceedings. A1468-69; *see also*

A1285.[2]

In its summary judgment order, the court rejected out of hand

BIAX's argument that the claim constructions did not require shared

access:

---

[2] BIAX subsequently asserted Claim 2 of the '628 patent, among others, but the court never separately construed that claim.

> BIAX contends that the patents do not require
> that all processor elements be able to access all
> condition code registers and condition storage.
> *The Court, however, has already unambiguously
> ruled that they do.*

A1899-1900 (emphasis added). The court explained that "[b]ecause the

claim language provided for shared access of the condition code storages

by processor elements, the Court [had] not import[ed] language to that

effect into the definition of condition storage," as Defendants had

requested. A1900. But, citing its earlier ruling, the court observed it

had nevertheless "made clear" that "'condition code storage locations are

shared by all processor elements.'" *Id.*

The court was surprised that BIAX had argued to the contrary.

The court pointed to its previous statement that "there was 'little risk'"

BIAX would attempt to argue no sharing was required. The court

continued, "Yet, that is the very argument BIAX asserts in response to

defendants' motions." *Id.*

BIAX further argued in its summary judgment opposition brief

that the "'shared by all'" requirement "'is immaterial and irrelevant'"

because individual processor elements should be viewed in isolation.

A1901. The court rejected this argument, reiterating its earlier

conclusion during claim construction that even a single processor element "still must be capable of accessing any condition code register." *Id.* (citing A1157). As a result, BIAX's "attempted isolation of a single processor element d[id] not change the fact that any particular processor element in the accused chips is incapable of accessing all condition code registers and that any particular condition code register is not shared by all of the other processor elements which exist within the accused chips." *Id.*

The court ruled that, "[f]or this reason, BIAX's reliance on" *SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327 (Fed. Cir. 1999), was also "unavailing." A1901. *SunTiger* held that "'[i]f a claim reads merely on a part of an accused device, that is enough for infringement.'" *Id.* (quoting 189 F.3d at 1336). But the claims here read on *no* part of the accused device because "the allegedly infringing processor elements found in RSX, NV40 and NV50 chips are incapable of accessing condition code registers or condition storage found in other processor elements within the respective chips." *Id.*

The district court concluded, "Because the Court has found such access to be a requirement of the patents, defendants are entitled to summary judgment on BIAX's infringement claims."  A1901-02.

BIAX appealed.  Following full briefing and argument, this Court affirmed in a per curiam order under Federal Circuit Rule 36.  *See* Judgment, No. 2012-1387 (Feb. 8, 2013).

### D.    The District Court Awards Attorney's Fees

While BIAX's appeal on the merits was pending, Defendants moved under 35 U.S.C. § 285 and 28 U.S.C. § 1927 to recover attorney's fees and expenses incurred between the district court's claim construction order (June 21, 2010) and the entry of judgment (March 26, 2012).  A10,190-10,205.  The district court granted the motion in part and denied it in part.

1.  At the time, the standard to find a case "exceptional" under § 285 was a high one:  The court was required to find that the litigation was both "(1) brought in subjective bad faith; and (2) objectively baseless."  *MarcTec*, 664 F.3d at 916.  The court found that BIAX's conduct met this high bar.

With respect to the subjective prong, BIAX had shown its willingness to "prolong[] the litigation in bad faith." A13.  In particular, "[l]acking a viable theory of infringement after the Court construed the claims, BIAX did not reevaluate its infringement claims, as it was required to do, but chose instead to oppose summary judgment by essentially ignoring the Court's previous rulings." A11 (internal citation omitted).  The court likened BIAX's actions to those of the plaintiff in *MarcTec*, which "'pursued its frivolous action by relying on mischaracterizations of the claim construction'" even after obtaining "'documentary evidence establishing that one of the claim limitations was not satisfied.'" A10 (quoting *MarcTec*, 664 F.3d at 918).  Here, "BIAX persisted in litigating this case even after its own expert conceded that the processors in defendants' chips cannot access all of the condition code storage locations." A12.

With respect to the objective prong, the district court considered that "the question in this case was not close:  once it became clear that defendants' devices did not meet the 'shared access' limitation, the outcome of the litigation was determined." A13.  And BIAX's "persistent disregard of the Court's unambiguous statements in orders

22

evidence[d] its culpability." A13. The court was unpersuaded by BIAX's suggestion that Defendants should have moved for summary judgment sooner, because "[t]he burden is not on defendants to prevent a plaintiff from advancing a baseless claim." *Id.* n.9.

Taking all these circumstances into account, the court "f[ound] that defendants are entitled to recover fees and costs incurred between June 23, 2011, the date of Dr. Davidson's deposition, and March 26, 2012, when the Court granted defendants' motion for summary judgment." A13. After carefully reviewing Defendants' fee records, the court awarded Sony $688,773 in attorney's fees. A37. The court also awarded NVIDIA $1,283,030.77 in fees. *Id.* The court's final fee award covered well under half the time period Defendants originally requested and provided an amount that was less than a third of Defendants' request.[3]

2. The court rejected BIAX's contention that, "because the protective order issued in this case permitted only BIAX's outside counsel to review many of the court filings," BIAX should be held

---

[3] BIAX does not challenge the amount of fees on appeal, but only whether fees should have been awarded at all in this case.

blameless. A13-14 (internal citation omitted). BIAX failed to explain "why the protective order prevented outside counsel from discussing with corporate counsel the implications of the Court's claim construction or from alerting corporate counsel about the bottom line conclusions reached by Dr. Davidson regarding whether the accused devices met the 'shared access' requirement." A14-15. Moreover, the court found that BIAX's claimed "ignoran[ce] of 'the identity, number or functionality of the accused products or devices'" proved too much: "BIAX cannot simultaneously assert that it had a reasonable basis for maintaining its litigation, and that it had no way of knowing whether or not it had a reasonable basis for maintaining its litigation." A15 (internal citation omitted). And in all events, the court found no reason why BIAX "should be relieved of liability for the conduct of its agent." A16 (citing Restatement (Third) of Agency §§ 1.01, 2.01(c)).

3. The court denied Defendants' request, however, to impose sanctions against BIAX's counsel directly under 28 U.S.C. § 1927. The court viewed § 1927 as "an alternative basis for a fee award," and denied it on the basis that it was already "granting defendants' motion for fees pursuant to § 285." A16.

Defendants moved for reconsideration, citing "new evidence . . . that BIAX will be unable to pay the fee award" because BIAX planned to file for bankruptcy protection. A21. Ruling on the motion, the court acknowledged that BIAX had "pursued this litigation with a full frontal assault." A22. The court nevertheless concluded that "counsel for BIAX" had not "exceeded the bounds of zealous advocacy," and stated that it would "place[] responsibility" for "BIAX's decision to oppose summary judgment . . . squarely on BIAX." A22.

### E. *Octane Fitness* And *Highmark*

BIAX timely filed this second appeal to challenge the district court's fees award, and Defendants timely cross-appealed the denial of fees under § 1927.

This Court then stayed briefing in these appeals pending the Supreme Court's resolution of two decisions governing attorney's fees under § 285: *Highmark Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744 (2014), which held that § 285 fee awards must be reviewed only for abuse of discretion; and *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which expanded the circumstances in which district courts may award fees under § 285.

Proceedings in this Court resumed once the Supreme Court rendered its decisions.

## SUMMARY OF THE ARGUMENT

I. The district court did not abuse its discretion in finding that BIAX persisted in this litigation unreasonably and in bad faith. In its claim construction order, the court had ruled "unambiguously" that the patents' claims required that condition code registers be *shared by all* processors. And it was undisputed that the registers in Defendants' systems *cannot* be accessed by all processors. When BIAX pressed ahead nevertheless, it unreasonably imposed substantial litigation costs on Defendants.

In particular, BIAX improperly attempted to circumvent the court's rulings by suggesting that these rulings applied only to certain unasserted claims—contrary to the clear language of the court's rulings. BIAX further argued that it could render the "shared access" requirement of the court's construction "immaterial and irrelevant" by directing its infringement accusations at individual processors viewed in isolation. In essence, BIAX's argument was that the court's claim construction ruling could be circumvented by ignoring portions of

Defendants' products—processors and condition code registers that were not shared—so that the court's ruling would have no role to play.

The court swiftly rejected this argument on summary judgment as being squarely foreclosed by its claim construction ruling and as an improper attempt to ignore that ruling. This Court affirmed that judgment under Rule 36. Having observed the evolution of BIAX's litigation position, and fully understanding the context in which it communicated its claim construction rulings to the parties, the court was well within its discretion to conclude that BIAX's position was neither reasonable nor advanced in good faith.

The court reached this conclusion under the higher substantive and evidentiary standards that controlled prior to *Octane Fitness*. Its judgment was correct when rendered, and it certainly was not an abuse of the court's now-even-broader discretion. Under *Octane Fitness*, a fees award is proper whenever a case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. at 1756. A case in which a party ignores an adverse claim construction ruling and

continues litigating is one that "sufficiently sets itself apart from mine-run cases." *Id.* at 1757. That is particularly so where, as here, the party is a non-practicing entity who has an incentive to press ahead with litigation (and hope defendants will settle to avoid litigation costs) notwithstanding the lack of any basis for success on the merits.

BIAX's suggestion that the protective order should insulate it from liability was also correctly held to be meritless. No precedent supports BIAX's view, which would severely weaken § 285's compensatory and deterrent force, given the prevalence of protective orders in patent litigation. In any event, BIAX had access to more than sufficient information about the litigation it initiated to understand that the court's claim construction rendered its infringement allegations hopeless. Although BIAX's counsel is surely to blame as well, BIAX cannot escape responsibility for the actions its authorized agents took on its behalf. The judgment should be affirmed as to the award of § 285 fees.

II. The same factual findings relied upon by the district court to award fees against BIAX under § 285 likewise dictate a fee award against BIAX's attorneys under § 1927. The district court found that

28

infringement was asserted by "essentially ignoring the Court's previous rulings" and that this conduct "prolonged the litigation in bad faith." A11-13. These findings necessarily apply to BIAX's attorneys who ignored the previous rulings and thereby prolonged this ligation in bad faith.

Under applicable Tenth Circuit law, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable" under § 1927. *See Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (internal quotation marks omitted). This standard is necessarily satisfied by the district court's factual findings regarding conduct of BIAX and its attorneys.

In view of these facts, the district court erred as a matter of law in excusing the misconduct of BIAX's attorneys as "zealous advocacy." This is contrary to the holdings of this Court that zealous advocacy does not diminish an attorney's obligation to refrain from frivolous litigation positions. A fee award under § 1927 is particularly appropriate here where Sony's and NVIDIA's efforts to obtain compensation from BIAX were blocked by a bankruptcy filing. Having pursued frivolous

litigation on behalf of an entity that cannot pay the price for the

misconduct at issue, BIAX's attorneys should bear joint and several

liability for expenses they unreasonably imposed on Sony and NVIDIA.

Accordingly, the judgment of the district court should be reversed as to

the denial of § 1927 fees.  Because the district court has already made

all necessary factual findings, including regarding the amount of fees, a

fee award under § 1927 should be entered by this Court.

## STANDARD OF REVIEW

This Court "review[s] all aspects of a district court's § 285

determination for abuse of discretion." *Highmark*, 134 S. Ct. at 1747.

"A district court abuses its discretion when its decision is based on

clearly erroneous findings of fact, is based on erroneous interpretations

of the law, or is clearly unreasonable, arbitrary or fanciful." *Cybor*

*Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en

banc).

In the context of § 285 attorney's fees, this standard requires

"'some deference to the district court upon appeal,'" in recognition of the

fact that "the district court 'is better positioned' to decide whether a

case is exceptional, because it lives with the case over a prolonged

30

period of time." *Highmark*, 134 S. Ct. at 1748 (quoting *Pierce v. Underwood*, 487 U.S. 552, 559-60 (1988)). Indeed, "[w]hen a district court's decision is based on an interpretation of its own order, [appellate] review is even more deferential because district courts are in the best position to interpret their own orders." *Energy Recovery, Inc. v. Hauge*, 745 F.3d 1353, 1356 (Fed. Cir. 2014) (internal quotation marks omitted) (applying Fourth Circuit law).

District court determinations under § 1927 are reviewed for abuse of discretion as well, but under Tenth Circuit law, "[w]here the exercise of that discretion depended on the resolution of a purely legal issue, . . . such a question" is reviewed "*de novo.*" *Hamilton*, 519 F.3d at 1202 ; *see Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) (regional circuit law applies to review of § 1927 determinations). Further, a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *See Highmark*, 134 S. Ct. at 1748 n.2.

# ARGUMENT

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING ATTORNEY'S FEES UNDER SECTION 285

District courts "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Under the Supreme Court's recent interpretation of this provision, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. This standard encompasses all "unreasonable conduct," and empowers the district court to "determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Id.* at 1756.[4]

---

[4] These may include, for example, "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Any one circumstance can be enough; "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

Even under the pre-*Octane Fitness* standard, a case could qualify
as "exceptional" when "the patentee [wa]s manifestly unreasonable in
assessing infringement, while continuing to assert infringement in
court." *Phonometrics*, 350 F.3d at 1246; *see also MarcTec*, 664 F.3d at
918 (patentee "knew that it had no basis for asserting infringement and
therefore pursued th[e] litigation in bad faith"). Such cases now fit
easily within *Octane Fitness*'s broader category of cases that "stand[]
out from others," and "set [themselves] apart from mine-run cases" so as
to be "exceptional." 134 S. Ct. at 1756-57. Here, the district court found
this case "exceptional" because BIAX continued litigating even after it
knew Defendant's products did not satisfy the court's sharing
requirement, and because its summary judgment arguments

---

Because § 285 includes but is not limited to conduct that is
"independently sanctionable" under other statutory provisions, *Octane
Fitness*, 134 S. Ct. at 1756-57, it would not be "anomalous" (BIAX Br. 42
n.11) for a court to award attorney's fees under the "exceptional" case
provision of § 285 while denying sanctions against attorneys for
"vexatious" litigation under § 1927. Here however, the facts found by
the district court revealed misconduct that required an award of fees
under § 1927 as well, as we show below in Part II.

"essentially ignor[ed] the Court's previous rulings" during claim construction. A11.

Having "live[d] with the case over a prolonged period of time," the district court was positioned to understand that BIAX's post-claim construction arguments were unreasonable—and insincere—attempts to evade the court's claim construction rulings. *Highmark*, 134 S. Ct. at 1748. "[C]onsidering both the governing law and the facts of the case," the "substantive strength of [BIAX's] litigating position" was nil following claim construction—and certainly following its expert's deposition—and thus this case clearly "st[ood] out from others."[5] *Octane Fitness*, 134 S. Ct. at 1756. Because the district court's finding of "unreasonable conduct," *Octane Fitness*, 134 S. Ct. at 1757, was

---

[5] Defendants maintained that this case became "exceptional" as soon as BIAX opted to continue litigating following the district court's claim construction order. The district court agreed that BIAX's reading of that order was unreasonable, but found that this case rose to the level of being "exceptional" only after BIAX's own expert confirmed that Defendants' products do not infringe the claims as interpreted by the district court. A13. As a result, the district court denied approximately two-thirds of Defendants' fees request under § 285. Defendants believe they were correct that this case became "exceptional" earlier. Nevertheless, in an effort to put an end to this long-running and meritless litigation, Defendants have elected not to challenge the district court's exercise of its discretion under § 285.

"based on an interpretation of its own order[s], [this Court's] review is even more deferential." *Energy Recovery*, 745 F.3d at 1356.

Notably, the district court found this case "exceptional" under a more demanding substantive standard, and a more searching burden of proof, than those that now apply after *Octane Fitness*. Under the standard in effect at the time, the court found "*both* that the litigation is objectively baseless *and* that the plaintiff brought it in subjective bad faith." *Id.* at 1756-57 (emphasis in original); *see Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1481 (Fed. Cir. 2005); A11-13. Moreover, the court found these circumstances "proved by clear and convincing evidence," A8, which was then Defendants' burden of proof. The Supreme Court has since lowered that burden to "a preponderance of the evidence standard." *Octane Fitness*, 134 S. Ct. at 1758. The court's exercise of discretion should be upheld.

### A. This Case Is Exceptional Because BIAX Persisted Even After The Claim Construction Foreclosed Its Theory Of Infringement And Its Own Expert Acknowledged Defendants' Products Did Not Infringe

A patentee's "decision to continue the litigation after claim construction" eliminates the basis for an infringement allegation has always sufficed to qualify a case as "exceptional." *MarcTec*, 664 F.3d at

919.  That is because it is well established "that a party cannot assert
baseless infringement claims and must continually assess the
soundness of pending infringement claims, especially after an adverse
claim construction."  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726
F.3d 1306, 1328 (Fed. Cir. 2013).  Indeed, "persist[ing] in advancing
unfounded arguments that unnecessarily extended this litigation and
caused [Defendants] to incur needless litigation expenses" is "vexatious
conduct [that] is, by definition, litigation misconduct" that can
"support[] [a] district court's determination that [a] case is exceptional."
*MarcTec*, 664 F.3d at 920-21.

Here, the district court found BIAX persisted in pursuing its
meritless allegations, even after the court's claim construction and
BIAX's own expert's testimony made clear that Defendants' products
did not infringe.  BIAX did so "by essentially ignoring the Court's
previous rulings" about the claims' sharing requirement.  A11.  As in
*MarcTec* and *Taurus*, the district court was well within its discretion to
find that this conduct was unreasonable.

### 1. The district court correctly concluded that BIAX's summary judgment strategy was to "ignore" the claim construction.

a.  During claim construction, the district court ruled that "[D]efendants are correct that any processor element is able to access any condition code register." A1157.  Similarly, with respect to the analogous "condition storage" term in the '313 patent, the court explained that "to the extent that there is any dispute over whether, despite the foregoing, condition code storage locations are shared by all processor elements, the Court rules that they are." A1164.

The district court reiterated these points in ruling on Defendants' motion for clarification, observing that "the attribute of shared access" was "clearly provided for by the claims at issue." A1203-04.  The court further emphasized that it "s[aw] little risk that plaintiff w[ould] attempt to argue at trial that processor elements are not able to access any condition code registers or condition storage locations." *Id.*

There was no question that Defendants' chips could not satisfy these limitations.  The undisputed facts showed that the "condition code registers" and "condition storage" register resources in each shader on Defendants' GPUs were dedicated to the processing unit in that

particular shader and could not be accessed by all the other processing units on the chip. A1901; *see also* A1414, A1428 (BIAX's technical expert's testimony). In other words, the accused chips contained the prior art architecture, in which condition code registers and storage were *dedicated* to individual processor elements, rather than *shared* by all processor elements.

b. Rather than attempt to show that Defendants' products satisfied the court's claim construction, BIAX's summary judgment strategy was built around ignoring that construction.

BIAX's lead argument was that the "shared access" requirement of the court's claim construction applied only to certain claims that were "unasserted" during claim construction, including Claim 2 of the '628 Patent. A6. In its fees order, the district court correctly found this argument was unreasonable. A11-12 & n.8. First, the court's claim construction ruling never stated that it applied only to certain claims. Indeed, it makes no sense for a court to issue a claim construction ruling that is applicable only to unasserted claims. Second, the court explicitly stated as part of its claim construction rulings that there is "little risk that plaintiff w[ould] attempt to argue at trial that processor

elements are not able to access any condition code registers or condition storage locations." A12. This would hardly be true if the court's construction applied only to unasserted claims. Notably, BIAX has not even attempted to defend the reasonableness of this position on appeal.

In opposing summary judgment, BIAX also made a second argument to evade the court's claim construction ruling. BIAX contended it could render the requirements of the court's claim construction rulings "immaterial and irrelevant" by refocusing its infringement accusations on individual shaders (i.e., individual pieces of Defendants' chips) viewed in isolation, and pretending that there were thus no other processors to be shared with. A1901; *see* A1287, A1469. BIAX supported this argument with the infringement opinion of its expert, who acknowledged that, "[i]n forming [his] infringement opinions with respect to" each patent, he "did not apply" "a requirement that the processor element is capable of accessing any of the condition code registers," nor a requirement "that condition code storage locations are shared by all processor elements." A5 (quoting A10,220-21). Most importantly, he agreed that the RSX does not infringe the "requirement that processor elements need to access any of the condition code

registers or condition code storage locations in the chip." A5 (quoting A10,222). He simply disregarded the district court's conclusion that there is such a requirement. *See id.* ("It doesn't infringe that requirement, no. But there is no such requirement.").

The district court made quick work of rejecting this argument on summary judgment. As the court had ruled during claim construction, even a single "processor element . . . still must be capable of accessing *any* code register," and the processor on any given shader could not. A1901 (emphasis added). BIAX's "attempted isolation of a single processor element [did] not change the fact that any particular processor element in the accused chips is incapable of accessing all condition code registers and that any particular condition code register is not shared by all of the other processor elements which exist within the accused chips." A1901. In addition to the inconsistency of BIAX's argument with the court's claim construction, the district court's conclusion was a foregone one because BIAX's attempt to ignore parts of the chips ran afoul of the patent itself, which addresses a "system architecture" as a whole. *See supra* at 9-10; *infra* at 51.

The district court rejected BIAX's related argument under this Court's *SunTiger* decision for the same reason. BIAX contended that "'[i]f a claim reads merely on a part of an accused device, that is enough for infringement,'" and asserted that its claims read on individual shaders. A1901 n.8 (quoting *SunTiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327, 1336 (Fed. Cir. 1999)). But that argument began from the premise that a single shader on a multi-shader chip actually does infringe the patents. And, as just explained, BIAX could not contend that *any* shader satisfied the claimed characteristics, because *none* of them contained processors capable of accessing all condition code registers or condition storage locations in the accused GPUs. As BIAX now acknowledges, its *SunTiger* argument "was a logical extension" of its primary argument that individual shaders infringe notwithstanding their lack of shared access. Br. 33. The arguments therefore fell together.

BIAX's argument was also foreclosed by this Court's decisions holding that patentees may not "carve out a portion" of an accused product to avoid other portions that would take the product outside the scope of the claims. *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377,

1382 (Fed. Cir. 2000); *see, e.g.*, *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (rejecting patentee's characterization of a product's feature as "simply an additional function" where "the accused . . . device does not merely practice an additional function or perform an additional step; it performs a function explicitly moved outside the scope of the claims"); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796-97 (Fed. Cir. 1990) (rejecting patentee's argument that a fully coated catheter guide wire infringed a patent covering a catheter with housing that "terminate[d]" at a specific point before the end of the guide wire, because ignoring the remainder of the coating "would require disregarding *not additional structure in the accused device* but *specific limitations* for the jacket set forth *in the claim*") (emphasis in original).

>  2.  **The district court correctly determined that this is an "exceptional case" warranting an award of attorney's fees.**

BIAX's summary judgment argument was like saying a tricycle infringes a patent on a unicycle, because a tricycle is just a unicycle that happens to have two additional wheels.  The court was correct to find BIAX's strategy unreasonable and exceptional.

The court emphasized that BIAX's arguments were premised on "essentially ignoring the Court's previous rulings." A11. BIAX's arguments "(1) that the 'shared access' limitation did not apply to all claims, and (2) that there was no limitation requiring that each processor element be able to access any condition code register on the chip," directly contradicted the court's earlier rulings. A12. And "BIAX's persistent disregard of the Court's unambiguous statements in orders evidences its culpability." A13.

BIAX's last-ditch argument was destined to fail because it was an attempt to nullify the district court's claim construction. Indeed, even after the court announced it "s[aw] little risk that plaintiff [would] attempt to argue at trial that processor elements are not able to access any condition code registers or condition storage locations," A1204, "that [was] the very argument BIAX assert[ed] in response to defendants' motions [for summary judgment]" by suggesting that the lack of sharing among processors was immaterial. A1900. As both the district court's pithy summary judgment order and this Court's Rule 36 affirmance demonstrate, the likelihood of success of BIAX's attempted end-run around the claim construction order was nonexistent.

43

Accordingly, the district court was well within its discretion to find that "BIAX's conduct in this case was similar to that of MarcTec and Phonometrics." A11. As in *MarcTec*, BIAX "advance[d] frivolous and unsupported allegations of infringement premised on mischaracterizations of the claim constructions adopted by the trial court" and attempted to prop up its infringement claims with unreliable expert testimony. *Id.* at 920; *see also* A12. As in *Phonometrics*, BIAX's failure to "articulate a viable theory of infringement" supports the district court's finding that it "continued to litigate [the] case knowing that its claim could not meet the standard for infringement" of the patent. 350 F.3d at 1247-48. And as in *Taurus* (which had not yet been decided when the district court ruled), BIAX "continued to assert its infringement claims, contending at summary judgment that" a claim term had a broader meaning than the one the district court had assigned during claim construction. 726 F.3d at 1329. A case in which a party ignores or attempts to nullify a district court's claim construction order is clearly one that "stands out from others" and "sufficiently set[s] [it] apart from mine-run cases to warrant a fee award." *Octane Fitness*, 134 S. Ct. at 1756.

In the end, "once it became clear that defendants' devices did not meet the 'shared access' limitation, the outcome of this litigation was determined." A13; *see also id.* ("the question in this case was not close"). Although BIAX "[l]ack[ed] a viable theory of infringement after the Court construed the claims, [it] did not reevaluate its infringement claims, as it was required to do, but chose instead to oppose summary judgment by essentially ignoring the Court's previous rulings." A11 (internal citation omitted). This "decision to proceed, not only in the face of the Court's claim construction, but in light of its own expert's testimony supporting a finding of non-infringement, 'prolonged the litigation in bad faith.'" A13-14 (quoting *Taurus IP v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 968 (W.D. Wis. 2008)). As the court found, "BIAX's conduct in aggressively pursuing this litigation, even after the unequivocal statement of its own expert that defendants' devices could not infringe the asserted patents, supports the conclusion that 'fee shifting may serve as an instrument of justice' in this case." A13 (quoting *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001)). The district court's considered exercise of discretion, which was "based on an interpretation of its own order[s]," is

entitled to deference and should be upheld.  *Energy Recovery*, 745 F.3d

at 1356; *see Highmark*, 134 S. Ct. at 1748.[6]

### 3. BIAX's new "computer" argument is meritless.

Before this Court, BIAX changes tack again, arguing that it

believed the Court's construction was subject to an unstated caveat that

its requirements applied only to whatever BIAX chose to characterize as

a "computer."  In particular, BIAX now contends that "[n]othing prior to

the order on summary judgment indicated that the District Court

would" view "the scope of the accused device"—what the claims call a

"computer"—to "encompass[] the entire GPU chip and not individual

_____

[6] In a footnote, BIAX states, "The fact that Defendants waited a
year after the Claims Construction Order to move for summary
judgment belies the contention that the result was obvious."  Br. 30
n.10.  But because of BIAX's avoidance of the "shared access" issue in
its technical expert report and discovery responses, it was not until
Defendants could depose BIAX's technical expert that Defendants were
able to fully confirm that BIAX's theory of infringement depended upon
rejecting the court's claim construction.  That deposition was delayed by
BIAX's repeated demands, over Defendants' opposition, for additional
discovery.  *See, e.g.*, A12,129 ("[I]t is time to turn to the merits of the
case, which Defendants are eager to do.").  Defendants promptly moved
for summary judgment once the deposition of BIAX's technical expert
removed all doubt that BIAX could not argue the accused products
provide "shared access."  In any event, "[t]he burden is not on
defendants to prevent a plaintiff from advancing a baseless claim."  A13
n.9.

shaders located on the chip." Br. 20. Yet, as BIAX admits, it did not previously advance this "computer" argument. Br. 13-14. That argument is waived, and it is meritless in any event. It is unreasonable for BIAX to have supposedly believed that it could add its own caveats to the court's unqualified claim construction. No reasonable litigant could have thought that an individual processing unit within a single integrated chip could be treated as a standalone device under these patents. Nor did BIAX actually think this was what the district court had in mind: during litigation prior to claim construction, BIAX itself treated Defendants' chips as the accused products.

a. BIAX emphasizes the word "computer" in the patents' preambles and criticizes the district court for "never mention[ing] the definition of 'computer.'" Br. 24; *see* Br. 20-25, 30-33. But there is little wonder why not: as BIAX itself acknowledges, "BIAX did not phrase its argument below by using the terms 'computer' and 'information processing apparatus.'" Br. 13. This Court will "not consider an issue not passed upon below," barring extraordinary circumstances not present here. *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1281-82 (Fed. Cir. 2012). BIAX's "computer" argument should be

rejected because it was neither pressed nor passed upon below.  The district court cannot have abused its discretion by failing to account for an argument BIAX never made to that court.

Moreover, allowing BIAX to advance this argument for the first time on appeal would be particularly improper given that, throughout this litigation, BIAX has insisted that the preambles do not necessarily limit the claims at all.  *See, e.g.*, A1370 n.1; A1256 n.1.  It cannot now credibly assert that it relied on the definition of the term "computer" in the preambles to formulate its position following claim construction.

b.  In any event, BIAX's new "computer" argument is merely another attempt to render the court's claim construction "immaterial and irrelevant" by creating an exception that swallows the rule—i.e., shared access is never really required because any non-shared components can be left outside of whatever BIAX chooses to identify as a "computer."  So the argument fails for all the same reasons as BIAX's previous attempt to isolate individual shaders.

In particular, there was no reasonable basis for BIAX to read unstated caveats into the district court's claim construction order.  Addressing the claims at issue here, the court held that "*any* processor

element is able to access *any* condition code register." A1157 (emphasis added). The court further held that "condition code storage locations are shared by *all* processor elements," A1164 (emphasis added). This dispositive ruling was "unambiguous[]," as the district court noted in its summary judgment order, A1900—not an "unstated proposition," as BIAX incorrectly suggests. Br. 33. The court's "any" and "all" language was unqualified, and BIAX could not have believed it could qualify the ruling itself.

BIAX's purported belief that the requirements of the court's claim construction were dependent upon what BIAX chose to characterize as a "computer" is particularly unreasonable given that the "computer" term appears only in the preambles. Neither party ever asked the Court to find the preambles limiting, thus leaving in place the typical result that preambles are non-limiting. *See American Medical Sys., Inc. v. Biolitec*, 618 F.3d 1354 (Fed. Cir. 2010) (explaining that "'[g]enerally,' we have said, 'the preamble does not limit the claims'"). And, as noted, BIAX has maintained throughout that the preambles do not limit the claims. *See, e.g.*, A1370 n.1; A1256 n.1. This directly contradicts BIAX's late-

Confidential
Material Omitted

claimed belief that the term "computer" acted as an unstated caveat to the court's claim construction ruling.

And by all appearances, BIAX had no basis to actually believe there was any ambiguity in the court's ruling. BIAX's own theory of the case prior to claim construction was that Defendants' chips were the accused products. BIAX's amended complaint identified the "Nvidia Accused Products" as including "the RSX graphics system incorporated into the Playstation 3 manufactured and sold by the Sony defendants, the GeForce 7 series of graphics systems, the GeForce 8 series of graphics systems, the GeForce 9 series of graphics systems, and the GeForce 10 series of graphic systems." A351-52. And the "Sony Accused Products" included "the Playstation 3 . . . which incorporates the RSX graphics system, [and] Sony personal computers, including those which incorporate Nvidia Accused Products." A353. Then, on March 5, 2010—just two weeks before BIAX filed its claim construction brief with the district court, and only three months before the *Markman* hearing—BIAX served Defendants with infringement contentions that identified the accused "computer" as the [["            ,"]] the name

Confidential
Material Omitted

of the chip in Sony's consoles.  A12,141, A1370.[7]  It was against this

backdrop that the parties entered the claim construction phase, and the

court issued its claim construction order.

   The patent itself also demonstrates that it would have been

unreasonable to read the court's order to have meant "any processor

element in whatever subset of processor elements the patentee chooses

to focus on," rather than "any processor element in the system

architecture."  After all, the "present invention" in BIAX's patents was a

novel "system" containing *non*-dedicated "condition code registers,"

whose "architectural structure" includes all processor elements and

condition code registers within the system, not just some.  A65, col.

13:26-28 & 59-60; *see also* A81, col.45:35 to col.46:34; A105, col. 4:49-53;

A106, col. 5:38-40.  And the patents state clearly that Figure 6 (*supra*,

at 9) is "the block diagram format of the *system architecture* of the

*present invention*."  A110, col. 14:30-32 (emphasis added).  The disclosed

and claimed invention allows no room for the sort of cropping of Figure

6 that BIAX's later assertion would require.

_____

   [7] Similar infringement contentions BIAX served that same day,
which were not filed below, name NVIDIA's chips (e.g., [["███████
███████]]") as the accused NVIDIA products.

The remainder of the court's claim construction analysis only made its scope more clear. The court held that "condition code storage locations are shared by *all* processor elements," A1164 (emphasis added), meaning that, to fit within the claims, a product with more than one processor element must have condition code registers that are "shared by all" processor elements. Whether "there is only one processor element," or whether "additional processor element[s]" are present, is a question of what the system contains, not what arbitrary line a patentee chooses to draw around some portion of the system.

The unreasonable nature of BIAX's supposed interpretation of the claim construction is further reinforced by the fact that this interpretation nullified any practical effect of the construction. The court contrasted "the event [in which] there is only one processor element" (in which case, although it must have access to all condition code storage, no other processor elements would share that same storage "since there would just be one" processor element), with the existence of multiple processor elements (in which case "sharing the condition code registers" is required of all processor elements). A1157; *see also* A1203-04 (reiterating the point). Yet under BIAX's view, it

could *always* avoid having to prove up the required shared access to the condition code registers by excluding from the scope of the accused "computer" all but one of the processor elements in an accused product, and excluding all registers that the single selected processor element cannot access. A1203. It was not reasonable for BIAX to supposedly assume that the district court was rendering so meaningless a claim construction.

BIAX is thus mistaken in contending (Br. 23) that the district court "engage[d] in a rolling claim construction" in which it defined "computer" for the first time at summary judgment. Rather, the court made clear in its claim construction rulings that the patents require sharing by "any" and "all" processor elements—a requirement that was never dependent in any way on the meaning of the term "computer" in the preamble. It held to that view throughout, expressing disbelief when BIAX continued to argue the opposite at summary judgment. *See* A1900. BIAX's belated "computer" argument should therefore be rejected.

## B. The Exceptional Nature Of This Case Is Further Reinforced Because BIAX Had Little To Lose Through Pursing Unreasonable Litigation

In "considering the totality of the circumstances" in this case, the reasons why BIAX would have pursued so futile a strategy cannot be ignored. *Octane Fitness*, 134 S. Ct. at 1756.

As noted, BIAX is a non-practicing entity that has filed—and settled—multiple suits for infringement of its patents. *See supra* at 6 & n.1. BIAX had everything to gain from keeping this litigation going as long as possible: "exploiting the high cost to defend complex litigation" is a common tactic to attempt "to extract a nuisance value settlement from" a defendant. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011). Indeed, a "history of filing nearly identical patent infringement complaints against a plethora of diverse defendants," followed by "demand[s] for a quick settlement," provides some "'indicia of extortion.'" *Id.* at 1326.

Meanwhile, BIAX had relatively little to lose in pressing ahead. "As a non-practicing entity, [BIAX] was generally immune to counterclaims for patent infringement, antitrust, or unfair competition because it did not engage in business activities that would potentially

give rise to those claims.  And while [BIAX] risked licensing revenue should its patents be found invalid or if a court narrowly construed the patents' claims to exclude valuable targets, [BIAX] did not face any business risk resulting from the loss of patent protection over a product or process.  Its patents protected only settlement receipts, not its own products." *Id.* at 1327-28.

An ordinary litigant would have withdrawn its suit following the court's claim construction, given the inevitable failure of its infringement argument and the danger of allowing Defendants' defenses of invalidity to be adjudicated.  And an ordinary litigant would not have pivoted to an implausible, alternative theory of infringement designed to render irrelevant the crux of the court's claim construction. By pressing ahead anyway, for seemingly exploitative purposes, BIAX "sufficiently set [this case] apart from mine-run cases to warrant a fee award." *Octane Fitness*, 134 S. Ct. at 1757.

A party's improper motivation is a well-established basis for finding a case "exceptional" under the Lanham Act, which, *Octane Fitness* observed, has an "identical fee-shifting provision."  134 S. Ct. at 1756.  The Seventh Circuit, for example, has held that "use [of the]

Lanham Act . . . for strategic purposes"—such as "piling litigation costs on a competitor" or otherwise pursuing goals "independent of the outcome of the case"—is a "type[] of suit rightly adjudged 'exceptional.'" *Nightingale Home Healthcare v. Anodyne Therapy*, 626 F.3d 958, 962-63 (7th Cir. 2010). Similarly, courts routinely consider "the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits" when evaluating whether a particular lawsuit warrants other sorts of sanctions. *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). In light of *Octane Fitness*'s command to place § 285 in line with fee-shifting statutes in other contexts, considerations of a patentee's motivation should factor into the "totality of the circumstances" analysis under § 285. *See* 134 S. Ct. at 1756-57 (referencing the Lanham Act twice); *id.* at 1758 (holding that § 285 should be applied like "comparable fee-shifting statutes"). The district court's findings of unreasonable conduct and subjective bad faith are consistent with BIAX's incentives here.

## C. A Protective Order Does Not Insulate A Litigant Against Responsibility For Its Agent's Misconduct

BIAX argues in the alternative that even if this case was exceptional, it should be absolved of responsibility for needlessly

prolonging this litigation because, "[a]s a result of the Protective Order in this case, most of the discovery received from Defendants bore an Attorneys' Eyes Only designation."  Br. 37.  But it is the rare patent dispute that does *not* involve a protective order that shields access to certain confidential information.  BIAX thus advances a sweeping and unprecedented position:  that patentees, even non-practicing entities like BIAX, may avoid accountability for any unreasonable litigation they spawn whenever they act through their outside counsel and experts.  In any event, as BIAX's publicly filed brief from its previous appeal on the merits demonstrates, BIAX had access to sufficient information to fully evaluate the merits of all issues relevant to noninfringement.  It was thus fully aware of the weakness of its position.

1.  The district court correctly rejected BIAX's bold argument, which is all the more brazen in light of the Supreme Court's recent efforts to restore some "'compensat[ory] and deterren[t]'" force to § 285.  *Octane Fitness*, 134 S. Ct. at 1756 n.6.  Section 285 provides a measured disincentive, what the Supreme Court described as "the mere shifting of attorney's fees."  *Id*. at 1757.  Yet allowing unreasonable litigants to

hide behind their attorneys would sap § 285 of even its limited power to deter such misconduct.

BIAX's position is also inconsistent with standard agency principles. As the district court held, "'[m]any forms of action . . . by an agent may carry legal consequences for the principal if the agent's act is done with actual or apparent authority.'" A16 (quoting Restatement (Third) of Agency § 2.01(c)); *see also MarcTec*, 664 F.3d at 920 (taxing § 285 fees against a party for, among other reasons, the misconduct of the party's counsel). This is why principals must choose their agents wisely, particularly where managing them closely is made difficult by practical constraints, such as restrictions on information-sharing. It is no answer to say, as BIAX does, that "[h]aving told BIAX it did not need the information [shielded by the protective order] because it could rely on its professionals, the District Court" could not "blam[e] BIAX for doing just that." Br. 41. The district court did not tell BIAX whom to delegate its authority to, nor how to manage those agents. The choice of which professionals to rely upon, and what instructions to give about how aggressively to litigate this case, was BIAX's alone. BIAX had every incentive to take care in delegating its authority to counsel who

would use that authority prudently. BIAX may regret, after the fact, that its chosen agent made bad decisions on BIAX's behalf, which have now incurred consequences for BIAX itself. And BIAX is certainly correct that its counsel is also culpable for the unreasonableness of BIAX's litigating position. *See* Part II, *infra*. But that does not absolve BIAX of responsibility.

It is therefore unsurprising that BIAX cites no case from any court, under any fee-shifting provision, holding that a protective order may free a party from responsibility for the sanctionable conduct of its representatives. This novel suggestion should be rejected. Particularly now that it is clear that § 285 requires no subjective intent at all, nothing in the statute justifies BIAX's extraordinary proposal. *See Octane Fitness*, 134 S. Ct. at 1757; *cf. Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013) ("actual knowledge of baselessness is not required").

2. In any event, BIAX had access to all of the details it needed to fully assess whether further litigation was viable. The district court's claim construction rulings were public. It was also public knowledge that the accused graphics chips contained multiple "vertex processors"

and "fragment processors," as evidenced by the publicly available
documents attached to Dr. Davidson's report. A11,124, A11,131. BIAX
and its agents could have discussed whether a basis existed to assert
infringement in view of this public information. In particular, nothing
prevented BIAX from learning from its counsel that litigation was in
fact being pursued based on the arguments subsequently advanced in
BIAX's summary judgment opposition brief: i) that the court's
constructions applied only to nonasserted claims, and ii) that the court's
rulings could be rendered "immaterial and irrelevant" by ignoring all
but one shader. A1901. There was nothing confidential about the
substance and meritless nature of these positions.[8]

The public availability of all information needed to appreciate the
substance of BIAX's meritless infringement positions is confirmed by
BIAX's publicly filed brief to this Court on its appeal of summary
judgment. That public brief fully described all issues necessary to
understand the substance of the noninfringement, including issues

---

[8] BIAX contends that "nothing in the Protective Order *permitted*
these communications," but BIAX misunderstands how protective
orders operate. Br. 40 (emphasis added). All that is prohibited is what
the order expressly prohibits; a protective order need not expressly
permit everything else.

relating to operation of the accused products, lack of shared access among all processors and condition code registers on the same device, and the same unreasonable arguments that the district court found made this case "exceptional." *See, e.g.*, Dkt. No. 24, No. 2012-1387 (Fed. Cir. July 30, 2012), at 10-12 (describing the "multiple identical fragment shaders which operate in parallel" on Defendants' chips), 12-13 (discussing BIAX's contention that individual shaders infringed BIAX's patents), 18-20 (describing the parties' arguments on summary judgment), 25-41 (stating BIAX's argument against the district court's "shared by all" requirement), 42-45 (contending that each individual shader was a separate infringing device). Anything that was publicly filed with this Court could have been discussed between BIAX and its counsel at any point during the litigation. Thus, BIAX clearly had unrestricted access to all of this information.

BIAX nevertheless insists that it knew neither "the infringement contentions," nor "the identity, number [n]or functionality of the accused products or devices." Br. 38. Thus it "could not compare the accused products against the parameters of the Claim Construction Order . . . and direct its litigation decisions accordingly." Br. 38. BIAX

protests too much. If BIAX did not even know its own theory of
infringement, it had no business bringing a lawsuit. Under Rule 11,
before filing suit, BIAX was obligated to "apply the claims . . . to an
accused device and conclude that there is a reasonable basis for a
finding of infringement of at least one claim." *View Eng'g, Inc. v.
Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). As the
district court put it, "BIAX cannot simultaneously assert that it had a
reasonable basis for maintaining its litigation and that it had no way of
knowing whether or not it had a reasonable basis for maintaining the
litigation." A15.

## II. THE DISTRICT COURT'S REFUSAL TO AWARD FEES UNDER SECTION 1927 WAS PREMISED ON LEGAL ERROR AND SHOULD BE REVERSED

Although BIAX cannot avoid responsibility by blaming its
attorneys, the attorneys should be held jointly accountable under § 1927
for their prominent role in the misconduct at issue in this case. The
same factual findings regarding unreasonable infringement accusations
that the district court relied on for its fee award against BIAX compel
the conclusion that the very actors who advanced those unreasonable
positions—BIAX's attorneys—should bear joint and several liability.

The district court found that the infringement accusations in this case were pursued by "essentially ignoring the Court's previous rulings" and that this "prolonged the litigation in bad faith." A11-13. These findings necessarily apply to BIAX's attorneys, who pursued the unreasonable and bad faith infringement accusations on BIAX's behalf. Nevertheless, the district court held that the misconduct of BIAX's attorneys was justified by "zealous advocacy." This was legal error.

This Court has held that zealous advocacy does not diminish an attorney's obligation to refrain from advancing frivolous litigation positions. *See Taurus IP*, 726 F.3d at 1329; *Eon-Net*, 653 F.3d at 1328 . Thus, BIAX's responsibility for the misconduct at issue under § 285 in no way diminishes the equally great culpability of its attorneys as the ones who actually carried out the misconduct at issue. Accordingly, the district court's refusal to award fees against BIAX's counsel under § 1927 based upon an error of law should be reversed.

## A.  The District Court's Factual Findings Compel A Fee Award Against BIAX's Attorneys Under Section 1927

Section 1927 provides for an award of fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The Tenth Circuit has held that "any

conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable" under § 1927. *See Hamilton*, 519 F.3d at 1202.[9] Fee awards under § 1927 are "not reserved for the worst offenders" and "are levied to compensate the victims of dilatory practices, not as a means of punishment." *See id.* For this reason, an award of fees under § 1927 "does not require a finding of bad faith." *See id.* "Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible." *See id.*

The district court's findings that BIAX—acting through its attorneys—engaged in unreasonable and bad faith conduct are more than sufficient to support a fee award under § 1927. In particular, the district court found that BIAX "lack[ed] a viable theory of infringement after the Court construed the claims," but nevertheless chose to "oppose summary judgment by essentially ignoring the Court's previous

---

[9] The law of the regional circuit is applied to review of rulings regarding sanctions under § 1927. *See Phonometrics*, 350 F.3d at 1246.

rulings." A11.  The court further found that BIAX "persisted in litigating this case even after its own expert conceded that the processors in defendants' chips cannot access all of the condition code storage locations." A12.  As a result of this misconduct, the court concluded that BIAX had "prolonged the litigation in bad faith."  A13.

BIAX's attorneys are implicated in the misconduct found by the district court no less than BIAX itself.  BIAX's attorneys participated in claim construction proceedings, received the court's orders, and were at least as aware as BIAX of the requirements imposed by the court's claim constructions.  A158, A160, A892, A928, A12,149-50.  The attorneys prepared, signed, and served BIAX's infringement contentions both before and after the claim construction ruling.  A12,142, A12,147.  BIAX's attorneys also defended the deposition of BIAX's technical expert, Dr. Davidson, where Dr. Davidson admitted that the requirements of the court's claim construction were not satisfied.  A1127.  And finally, the attorneys submitted and signed the summary

judgment briefing that "essentially ignor[ed]" the court's claim construction ruling.[10]  A11; *see* A1281-1300.

This sequence of participation by BIAX's attorneys in the misconduct found by the district court necessarily satisfies the legal standard for a fee award under § 1927.  Vigorously pursuing an infringement case by "essentially ignoring the court's previous [claim construction] rulings," A11, is unquestionably conduct that "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Hamilton*, 519 F.3d at 1202.  Doing so after hearing firsthand an admission of BIAX's own technical expert that undercuts BIAX's infringement positions manifests a particularly intentional, or at least reckless, disregard of counsel's basic duty to refrain from frivolous infringement accusations.  Any doubt whether the misconduct of BIAX's attorneys is sufficiently extreme to warrant a fee

---

[10] Culpability of BIAX's attorneys is further reinforced by BIAX's representation that the "decision was left to its counsel" whether it was reasonable to continue litigating.  Br. 44.  BIAX's attorneys indisputably had full access to all information at issue in the litigation and, if BIAX's representation is credited, exercised their own discretion to proceed with infringement accusations the attorneys knew to be baseless.  Although this does not excuse BIAX's own responsibility for its agents' misconduct (as explained above in Part I.D), it is clear that the attorneys were primary drivers of the misconduct at issue.

award under § 1927 is resolved by the district court's finding of "bad faith," an element that is not even required under § 1927. A13; *Hamilton*, 519 F.3d at 1203.

The result of this attorney misconduct was an "objectively vexatious and unreasonable multiplication of proceedings at expense" of Sony and NVIDIA. *See Hamilton*, 519 F.3d at 1203. The district court already made findings, in connection with its § 285 fee award against BIAX, regarding the significant expenses resulting from unreasonably prolonging the litigation after the deposition admissions of BIAX's expert. A24-39. These expenses are equally attributable, under § 1927, to the misconduct of BIAX's attorneys.

An award of fees under § 1927 is particularly appropriate here in view of the fact that such fees "are levied to compensate the victims of dilatory practices." *See Hamilton*, 519 F.3d at 1203. Sony and NVIDIA are presently unlikely to receive compensation for the misconduct at issue due to BIAX's strategy of responding to the court's fee award with a bankruptcy filing. A12,191, A12,198. Notwithstanding the millions of dollars of attorney time invested in pressing its frivolous accusations, BIAX, while preparing its bankruptcy papers, advised NVIDIA's

counsel that BIAX has truly limited assets. A12,188. BIAX also advised that those assets are fully encumbered to pay only secured obligations to BIAX's own insiders. A12,188.

This Court has expressed concern over the risk of such predicaments in lawsuits by non-practicing entities, like BIAX, who have the "ability to impose high costs to defend against its meritless claims" but are "generally immune" to any downside exposure. *See Eon-Net*, 653 F.3d 1314 at 1327-28. Here, BIAX's attorneys not only aggressively pursued frivolous infringement accusations, they did so on behalf of a party that was unlikely to be able to pay the price of this misconduct. Under these circumstances, joint and several liability of BIAX and its attorneys should be imposed to serve the compensatory purpose of § 1927.

### B. The District Court's Refusal To Award Fees Against BIAX's Attorneys Under Section 1927 Is Based On Legal Error

Although the district court declined to award fees against BIAX's attorneys under § 1927, it made no findings that diminish the factual and legal bases set forth above. Rather, the district court's reasoning was based upon legal error that is subject to *de novo* review by this

Court.  *See Hamilton*, 519 F.3d at 1202 (holding that "[w]here the exercise of [a district court's] discretion depended on the resolution of a purely legal issue, however, we approach such a question *de novo*").  By relying upon an error of law, the district court abused its discretion in refusing to award fees under § 1927.  *See Highmark*, 134 S. Ct. at 1748 n.2.

In its Order awarding attorneys fees under § 285, the district court declined to consider what it characterized as an "alternative basis for a fee award" under § 1927.  A16.  The Court ruled that because it was "granting defendants' motion for fees pursuant to § 285, it will deny the alternative request under § 1927."  A16.  This ruling was based upon a misunderstanding of Sony's and NVIDIA's fee request under § 1927.

Sony and NVIDIA sought fee awards under each of § 285 and § 1927.  These were not two alternative bases for the same relief.  Rather, the request under § 1927 was for a fee award against BIAX's attorneys.  The practical distinction between these two forms of relief is readily apparent from the facts of this case.  As noted above, the § 285 fee award has been obstructed by BIAX's bankruptcy filing and its

69

claims of secured obligations to its own insiders.  An award under
§ 1927 would remove this roadblock and allow compensation to be
obtained from BIAX's attorneys.  Thus, the district court was incorrect
that the § 1927 request was an "alternative basis" rendered moot by the
§ 285 award.

For this reason, this Court has upheld fee awards entered under
both § 285 and § 1927, where a party and its counsel acted together to
unreasonably multiply the proceedings with unreasonable infringement
accusations.  *See Phonometrics*, 350 F.3d at 1248 (affirming a district
court's decision to award fees under both § 285 and § 1927 where a
party continued to litigate despite a claim construction that foreclosed
their infringement claims); *Phonometrics v. ITT Sheraton Corp.*, 64 F.
App'x 219, 221 (Fed. Cir. 2003) (affirming a district court's decision to
award attorney's fees under both § 285 and § 1927 where a party
"continued to litigate . . . even after it knew that it could not prevail on
the merits").  The same result is appropriate here.

After Sony and NVIDIA pointed out in a motion for
reconsideration that § 1927 remained relevant, particularly in view of
BIAX's bankruptcy, the district court provided another legally

70

erroneous reason for declining to award fees against BIAX's attorneys. The district court ruled that BIAX's attorneys had not "exceeded the bounds of zealous advocacy" because the court had already placed responsibility for the misconduct at issue "squarely on BIAX." A22. But this is contrary to holdings of this Court and is legal error.

This Court has refused to allow the principle of "zealous advocacy" to serve as an excuse for unreasonable litigation positions. In rejecting such an argument, this Court held that "an attorney, in addition to his obligation to his client, also has an obligation to the court and should not blindly follow the client's interests if not supported by law and facts." *See Eon-Net*, 653 F.3d at 1328. This Court has similarly held that although an attorney "can and should represent its client 'zealously,' attorneys are always charged with the 'obligation to file cases reasonably based in law and fact and to litigate those cases in good faith.'" *See Taurus IP*, 726 F.3d at 1329.

In view of this precedent, the district court's acceptance of "zealous advocacy" as an excuse for the misconduct of BIAX's attorneys was legal error and therefore necessarily an abuse of discretion. It is irrelevant whether the district court already placed responsibility

"squarely on BIAX" because this in no way diminishes the culpability of BIAX's attorneys for perpetrating the misconduct at issue by pressing frivolous infringement accusations on BIAX's behalf.  BIAX's attorneys had their own independent duty to refrain from vexatiously and unreasonably multiplying the proceedings.  Because this duty was violated, the district court's refusal to award fees under § 1927 should be reversed.  Given that the district court has already made all necessary factual findings, including regarding the amount of fees, a fee award under § 1927 should be entered by this Court.

## CONCLUSION

For the foregoing reasons, the judgment of the district court

should be affirmed as to the grant of attorney's fees under 35 U.S.C.

§ 285 and reversed as to the denial of attorney's fees under 28 U.S.C.

§ 1927.

Dated:    July 14, 2014       Respectfully submitted,

By: */s/ David Rokach\**      By*: /s/ Mark S. Davies*
David Rokach            Mark S. Davies
KIRKLAND & ELLIS LLP    ORRICK, HERRINGTON
300 North LaSalle           & SUTCLIFFE LLP
Chicago, IL 60654          1152 15th Street NW
Telephone: (312) 862-3169   Washington, DC 2005
David.rokach@kirkland.com   Telephone: (202) 339-8631
                       mdavies@orrick.com

*Attorney for Defendants-Cross-*   *Attorney for Defendant-Cross-*
*Appellants, Sony Computer*     *Appellant, NVIDIA Corporation*
*Entertainment America, Inc.*
*and Sony Electronics, Inc.*

     * Counsel for Sony has consented to NVIDIA's ECF filing of this
document.

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July 2014, I caused the nonconfidential version of the Principal and Response Brief of the Defendants-Cross Appellants NVIDIA Corporation, Sony Computer Entertainment America LLC and Sony Electronics, Inc., to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send e-mail notification of such filing to the following counsel of record:

> Christian C. Onsager
> Onsager Guyerson Fletcher Johnson
> 1801 Broadway
> Suite 900
> Denver, CO 80202
>
> *Attorney for Plaintiff-Appellant BIAX Corporation*

In addition, a copy of the foregoing was served vie email to:

> Tucker K. Trautman
> Dorsey &Whitney, LLC-Denver
> 1400 Wewatta St., Suite 400
> Denver, CO 80202-5647
> trautman.tucker@dorsey.com

Dated:     July 14, 2014                    Respectfully submitted,

By*: /s/ Mark S. Davies*
Mark S. Davies
ORRICK, HERRINGTON
    & SUTCLIFFE LLP

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE
## 32(A)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Defendants-Cross Appellants NVIDIA Corporation, Sony Computer Entertainment America LLC and Sony Electronics, Inc. certify that the brief contained herein has a proportionally spaced 14-point typeface and contains 13,706 words, based on the "Word Count" feature of Word 2007, including footnotes and endnotes. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, Abbreviations, and Statement of Related Cases.

Dated:     July 14, 2014          Respectfully submitted,

By: */s/ Mark S. Davies*
Mark S. Davies
ORRICK, HERRINGTON
& SUTCLIFFE LLP