Nos. 2013-1649, -1653, -1654

**IN THE**

# United States Court of Appeals
# for the Federal Circuit

---

BIAX CORPORATION,

Plaintiff-Appellant,

v.

NVIDIA CORPORATION,

Defendant-Cross-Appellant,

and

SONY COMPUTER ENTERTAINMENT AMERICA, INC. and SONY ELECTRONICS, INC.

Defendants-Cross-Appellants,

---

Appeal from the United States District Court for the District of Colorado in Case No. 09-CV-1257, Judge Philip A. Brimmer

---

**APPELLANT BIAX CORPORATION'S**

**CORRECTED OPENING BRIEF**

Christian C. Onsager
Andrew D. Johnson
ONSAGER | GUYERSON | FLETCHER | JOHNSON, LLC
1801 Broadway, Suite 900
Denver, CO  80202
Telephone: (303) 512-1123
Facsimile: (303) 512-1123
Counsel for Plaintiff-Appellant BIAX Corporation

January 29, 2015

## CERTIFICATE OF INTEREST

Counsel for the Appellant BIAX Corporation, Christian C. Onsager, certifies the following:

1. The full name of every party or amicus represented by me is: Biax Corporation.

2. The entity named above is the real party in interest.

3. No parent corporation or publicly held companies own 10 percent or more of the stock of BIAX Corporation.

4. The names of all law firms and the partners or associates that appeared for BIAX Corporation now represented by me in the trial court or are expected to appear in this Court are:

On this appeal: Onsager | Guyerson | Fletcher | Johnson, LLC, 1801 Broadway, Suite 900, Denver, CO 80202; Christian C. Onsager, Andrew D. Johnson, David M. Little.

In the trial court: Dorsey & Whitney LLP 1400 Wewatta Street, Suite 400, Denver, Colorado 80202-5549; Steven J. Merker; Tucker K. Trautman; Lee F. Johnston; Evan M. Rothstein; V. Aaron Hughes.

Ireland Stapleton Pryor & Pascoe, PC, 1675 Broadway, Suite 2600, Denver, CO 80202; Timothy G. Atkinson; Kelley B. Duke; Mark E. Lacis

# TABLE OF CONTENTS

Table of Authorities………………………………………………………………..v

STATEMENT OF RELATED CASES……………………………………….....vi

JURISDICTIONAL STATEMENT…………………………………………..1

STATEMENT OF THE ISSUES……………………………………….…2

STATEMENT OF THE CASE…………………………………………..…2

STATEMENT OF THE FACTS……………………………………………...5

I.      The BIAX Patents…………………………………………….…5

II.     The Vertex Processing Engines and the Fragment Shaders Are the Accused Structures…………………………………………………………6

III.    The Protective Order……………………………………………...9

IV.     The District Court's Claim Construction…..……………………………10

V.      The Summary Judgment Pleadings…………………..………………….11

VI.     The Fee Order……………………………………………………...14

SUMMARY OF THE ARGUMENT…………………………………………..16

STANDARD OF REVIEW…………………………………………………17

ARGUMENT…………………………………………………………...18

I.      THE DISTRICT COURT'S CONCLUSION THAT THIS CASE IS "EXCEPTIONAL" IS WRONG ..…………………………………………..18

        A.      THE STANDARD FOR AN AWARD UNDER § 285……………..18

B.    BIAX'S ARGUMENT THAT EACH SHADER WAS AN
      IDENTIFIED INFRINGING DEVICE WAS NOT OBJECTIVELY
      BASELESS OR UNREASONABLE……………………….………20

      1.    BIAX's Identification of the Accused Device as an Individual
            Shader was a Reasonable Construction of the Scope of
            "Computer" …………………………………….……………20

      2.    The Record Prior to the Summary Judgment Order did not
            Preclude BIAX's Argument …………………………………22

      3.    BIAX had Admissible Evidence to Support the Argument that
            Each Shader Was a "Computer"……………………….………30

      4.    BIAX'S Argument Under *Suntiger* Was Reasonable….…..…33

C.    THE DISTRICT COURT'S FINDINGS OF BAD FAITH IS BASED
      SOLELY ON ITS FINDINGS OF OBJECTIVE
      BASELESSNESS…………………………………………………...36

D.    THE EFFECT OF THE PROTECTIVE ORDER MUST BE
      CONSIDERED IN THE TOTALITY OF THE
      CIRCUMSTANCES…………………………………………………...37

      1.    The Protective Order Kept BIAX from the Essential
            Information……………………………………………….……..37

      2.    The Protective Order Prevents this Case from being
            Exceptional……………..………………..……..………..43

CONCLUSION……………………………………..……………………………..45

# TABLE OF AUTHORITIES

## Cases

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378,
(Fed. Cir. 2005)……………………….…….…...……...........19, 36

*Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744
(2014)…………………………………………………………….4, 17

*Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 106
(Fed. Cir. 2009) …………………….………………..…….…...…..43

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir.
2004)………………………………………………………………18

*Kilopass Technology, Inc.* v. *Sidense Corp.*, 738 F. 3d 1302 (CA Fed
2013)…………………………………………………………....43

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)
(en banc); *aff'd* 517 U.S. 370 (1996)…………………….…..……..10, 23, 38

*Miera v. Dairyland Ins., Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998)…………..42

*Neomagic Corp. v. Trident Microsystems*, 287 F.3d 1062 (Fed. Cir. 2002)…..…29

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,
1359 (Fed. Cir. 2008)…………………………...……………….……………23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, No. 134 S. Ct. 1749
(2014)…………………………………………………4, 19, 36, 43, 44, 45

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377
(Fed. Cir. 2005)……………………………………………..……..23

*Suntiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327
(Fed. Cir. 1999)………..…………………………………13, 33, 34, 35

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326 (Fed. Cir.
2005)……………………………………………………………17

## Statutes

28 U.S.C. § 1295……………………………………………………...1

28 U.S.C. § 1331 ……………………………………………....…1, 33

28 U.S.C. § 1338……………………………………………………...1

28 U.S.C. § 1927 ……………………………………………….3, 15, 42

35 U.S.C. §285……………………………………….…….…………*passim*

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 28(a)(4) and 47.5, Plaintiff-Appellant BIAX Corporation ("BIAX") states that an appeal in this same civil action has previously been before this Court as Appeal No. 2012-1387.

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the action giving rise to this appeal under 28 U.S.C. §§ 1331 and 1338(a). The District Court entered its final judgment dismissing all claims of BIAX and the Defendants on March 28, 2012. A1911-12. BIAX appealed to this Court from that judgment on April 25, 2012 in Appeal No. 2012-1387. This Court affirmed the District Court per curiam on March 18, 2013. Defendants filed their Motion for Fees and Expenses after Claim Construction (the "Fees Motion") on April 27, 2012. The District Court granted the Fees Motion by Order dated March 30, 2013 (the "Fee Order"), and required further proceedings to determine the amount of the fee award. A1-17.  The District Court entered final judgment on August 12, 2013. A24-39.  BIAX timely filed its Notice of Appeal from this final judgment on September 6, 2013.

Sony filed its notice of appeal on September 10, 2013. Nvidia filed its notice of appeal on September 11, 2013.

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

1

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in determining that BIAX's arguments became objectively baseless, thus making the case "exceptional," after the deposition of its expert.

2.     Whether the Protective Order entered in the case at the insistence of the Defendants and which limited access to the information critical to evaluating its claims to "attorney's eyes only" mitigates whether the case is exceptional under § 285.

## STATEMENT OF THE CASE

BIAX brought suit in the United States District Court for the District of Colorado against Nvidia Corporation ("Nvidia"), Sony Computer Entertainment America, Inc., and Sony Electronics, Inc. (collectively "Sony")[1] alleging that graphics systems found in certain Nvidia graphics products and in the RSX graphics system incorporated into the Sony Playstation 3 video game console, infringe BIAX U.S. Patent Nos. 5,517,628 and 6,253,313 (respectively, the "'628 patent" and the "'313 patent").  Amended Complaint, A348-58. The patents in suit relate to parallel processing computer systems which use two or more condition

---

[1] Sony Computer Entertainment Inc., Sony Corporation of America, and Sony Corporation were also originally defendants, but were dismissed from the case by agreement.

code registers for the storage and usage of condition code values in a device that receives, processes, and presents data. BIAX accused certain devices known as vertex processing engines, fragment shaders and streaming multiprocessors that were contained within Defendants' graphics processing units.

The District Court issued its Order Regarding Claim Construction on June 21, 2010 (the "Claim Construction Order"), A1121-68. On August 11, 2010, Defendants filed a Motion for Clarification of Claim Constructions to Incorporate Statement Made in the Claim Construction Order (the "Clarification Motion"), A1169-1202, which the District Court denied on October 28, 2010.

Nine months later on August 3, 2011, Sony and Nvidia moved for summary judgment. A1205-25 (Sony's Motion for Summary Judgment); A1388-1407 (Nvidia's Motion for Summary Judgment of Non-Infringement); A1442-61 (Nvidia's Corrected Motion for Summary Judgment of Non-Infringement). The District Court granted the motions and dismissed BIAX's infringement claims. A1896-1905.

BIAX appealed from that judgment to this Court on April 25, 2012. During the appeal, Defendants filed their Fees Motion seeking to recover $6,272,888.37 in attorney's fees and costs from BIAX pursuant to 35 U.S.C. § 285 and from BIAX's counsel, Dorsey & Whitney, LLP ("Dorsey") under 28 U.S.C. § 1927.

On March 18, 2013, this Court affirmed the District Court's summary judgment orders *per curiam.*

After briefing, the District Court granted the Fees Motion as to BIAX on March 30, 2013, subject to determination of the amount, but denied it as to Dorsey. A1-17 (the "Fee Order"). The District Court awarded the Defendants a total of a total of $2,011,365.01 by order dated August 12, 2013. A24-39. BIAX filed its notice of appeal on September 6, 2013. Sony filed its notice of appeal on September 10, 2013, and Nvidia filed its notice of appeal on September 11, 2013.

On November 26, 2013, BIAX filed its opening brief.[2] On January 28, 2014, this Court granted Sony and Nvidia's Motion to Stay and stayed the appellate proceedings pending the Supreme Court's decisions in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) (hereinafter "*Octane*") and *Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744(2014), which were rendered on April 29, 2014.

By stipulation, the parties requested that BIAX be allowed through June 12, 2014 to file a revised opening brief.

---

[2] BIAX filed a corrected Opening Brief on December 18, 2013.

# STATEMENT OF THE FACTS

## I.    THE BIAX PATENTS

Morrison Computer Corporation[3] was a Colorado company founded in 1982 to design, build, and market high performance computer systems. In 1987, Morrison Computer reorganized its two entities into one, BIAX, to facilitate future financing. The company spent about two million dollars developing its technology and received five United States patents and three international patents relating to inventions its employees developed.[4] The patents in suit relate generally to parallel processing computer systems which use two or more condition code registers for the storage and usage of condition code values in a device that receives, processes, and presents data. A40-85 ('628 patent), A86-127 ('313 patent). BIAX has never purchased any patents.

BIAX invented a system and method for using multiple addressable condition code registers. In one embodiment, BIAX's invention contains a processor element and multiple addressable condition code registers. The key feature of the embodiment is the inclusion of multiple addressable condition code registers, which, as the specification states, "avoids the operational dependency that would occur if only one group of condition codes were available to the

---

[3] BIAX has approximately 50 shareholders, all of whom were shareholders in Morrison Computer Corp.

[4] All of the patents were granted years after the Morrison/BIAX reorganization.

instruction stream." '313 patent, A108 at col. 9, ll.23-25. The embodiment with the key feature of multiple addressable condition code registers is in claim 1 of the '628 patent and claim 3 of the '313 patent.

In a second more advanced embodiment, BIAX's invention has multiple processor elements and multiple condition code registers, with condition code registers being shared by two or more processor elements. This embodiment is in claim 2 of the '628 patent and claim 1 of the '313 patent.

As detailed in the infringement report of BIAX expert Dr. Edward S. Davidson, A1484-1698 ("Davidson Report"), BIAX alleged infringement of claim 3 of the '313 patent, and Claims 1 and 2 of the '628 patent, among other claims. Davidson Report at 1-9 (table of contents listing asserted claims) & 15-16 (summary of infringement opinions), A1485-93, 1499-1500.

## II. THE VERTEX PROCESSING ENGINES AND FRAGMENT SHADERS ARE THE ACCUSED STRUCTURES

BIAX specifically identified the individual vertex processing engines, fragment shaders and streaming multiprocessors as the infringing devices in its infringement contentions. *See* Exhibit 13 to Sony's Motion for Summary Judgment, A1253-1277 (BIAX's Supplemental Response to Interrogatory No. 1).

Each accused vertex processing engine, or "VPE," is a separate programmable processing engine which executes instructions especially suited for

manipulating vertex data, *i.e.*, the attributes of polygons which mathematically describe computer-generated objects to be displayed on a screen. *See* Davidson Report at ¶¶ 50, 53, A1512, 1513-14. Each individual VPE contains a single "processor element" that can access all of that VPE's multiple addressable condition code registers. BIAX expert Dr. Davidson identified each VPE as the "computer" referenced in the preamble of claim 1 of the '628 patent and the "instruction processing apparatus" referenced in the preamble of claim 3. Each VPE separately meets all of the limitations of claim 1 of the '628 patent, Davidson Report at ¶¶ 50, 53, 94-110 & Ex. 7, A1512, 1513-14, 1530-36, 1644-51, and all of the limitations of claim 3 of the '313 patent. *Id.* at ¶¶ 68-82, A1521-26.

The accused fragment shader is a programmable processing engine that processes pixels to determine their final color. *Id.* at ¶¶ 50, 55, A1512, 1514. Each fragment shader contains two "processor elements" that share multiple addressable condition code registers within the fragment shader. Dr. Davidson identified each shader as a "computer" as referenced in the preamble of claim 1 of the '628 patent, *id.* at ¶¶ 150-167 & Ex. 10, A1551-59 & A1669-81, and the "instruction processing apparatus" referenced in the preamble of claim 3 of the '313 patent. Each fragment shader separately meets all of the limitations of claim 1 of the '628 patent. *Id.* at ¶¶ 150-67 & Ex. 10, A1551-59 & A1669-81; *see also, id.* at ¶¶ 168-9, A1559-60 (fragment shader infringes claim 2 because it has two processor

7

elements that share condition code registers). Each fragment shader also separately meets all of the limitations of claim 3 of the '313 patent. *Id*. at ¶¶ 120-37 & Ex. 8, A1540-47 & A1652-1668.

In some GPU architectures, VPE and fragment shader functions are performed by a single unit that Nvidia refers to as a "streaming multiprocessor." *Id*.at ¶ 59, A1517. Each accused streaming multiprocessor contains at least one "processor element" that can access multiple addressable condition code registers within the streaming multiprocessor. Each streaming multiprocessor separately meets all of the limitations of claim 1 of the '628 patent. *Id*. at ¶¶ 60, 204-224 & Ex. 12, A1517-18, A1574-83 & A1690-98. Each streaming multiprocessor also separately meets all of the limitations of claim 3 of the '313 patent. *Id.* at ¶¶ 179-93 & Ex. 11, A1563-69 & A1682-89.

Although any particular GPU chip contains more than one VPE, shader or streaming multiprocessor that work in parallel, BIAX specifically identified the <u>individual</u> VPEs, streaming multiprocessors and shaders[5] of the products, as opposed to the entire GPU chip, as structures infringing the patents in claim charts

---

[5] The differences between a fragment shader, a VPE and a streaming multiprocessor are not material at this stage, and therefore BIAX will refer to these devices as "shaders" except when the context requires otherwise.

produced to Defendants. *See* Exhibit 13 to Sony's Motion for Summary Judgment, A1253-1277 (BIAX's Supplemental Response to Interrogatory No. 1).

### III.    THE PROTECTIVE ORDER.

Early in the case, Defendants requested that all confidential information be withheld from BIAX's president and general counsel (BIAX's only employees). A359-438.  BIAX countered that the lack of access to the expert reports and claim charts would interfere with its ability "to make reasoned decisions concerning the conduct of this litigation."  BIAX Motion for Entry of a Protective Order, pp. 3-4, A361-62.   The Defendants responded that BIAX had no need for highly confidential information because "BIAX's experienced outside counsel, who has been involved since the inception of litigation, has access to all such material under Defendants' proposal." Defendants' Response to Plaintiff's Motion for Entry of Protective Order, p. 8, A553.

The court entered an order that denied all BIAX personnel access to Defendants' designated "Attorneys' Eyes Only" materials (the "Protective Order"). *See* Protective Order, ¶ 16, A573-74.  It reasoned that BIAX's ability to pursue its claims would not be impeded because BIAX's outside counsel Dorsey—the "individuals who have been primarily active in the litigation"—still had the opportunity to review all documents. Order on Cross Motions for Protective Order, p. 4, A565.

## IV.    THE DISTRICT COURT'S CLAIM CONSTRUCTION

At the *Markman* stage of the case, the District Court noted that while Claim 2 of the '628 patent separately provides that condition code registers must be shared by all processor elements, claim 1 expressly allows for the use of only one processor element,[6] in which case the concept of "sharing" among processors would not apply. Claim Construction Order at A1156-57.

With respect to the term "condition storage" in the '313 patent, the District Court noted that where the claims require "condition storage" to be shared by processors, as in unasserted claim 1 of the '313 patent, the claim said so.  The court explained that because "the claim language clearly provides that the 'condition code storages' are accessible by 'each of said processor elements,'" "it is unnecessary to import that quality into the definition of the term." Claim Construction Order at A1163-64. The District Court adopted BIAX's proposed constructions for "condition code register" and "condition storage" without the limitation "which is shared by all processor elements" in either. Claim Construction Order at A1167-68.

BIAX, Sony, and Nvidia stipulated to the construction of "computer" as used in claim 1 as "a device that receives, processes, and presents data." Davidson

---

[6] The District Court determined that "processor" and "processor element" are the same, Claim Construction Order, A1121-1168, so BIAX will use only the term "processor."

10

Report at ¶ 95, A1530. Thus, the District Court did not construe the term in its Claim Construction Order, and the scope of "computer" or the corresponding term "instruction processing apparatus" was not put into issue until summary judgment (and even then was not discussed explicitly). A128-261. The Claim Construction Order does not address whether the definition applies to any device on a chip that "receives, processes, and presents data," or only to an entire GPU chip,

The Defendants filed their Clarification Motion again seeking to have the additional limitation that any processor is able to access any condition code register or condition storage included in "condition code register" and "condition storage."   A1169-1202.[7]   The District Court denied the Clarification Motion. A1203-04.

## V.    THE SUMMARY JUDGMENT PLEADINGS

Sony subsequently filed its motion for summary judgment based on its contention that: (1) the Claim Construction Order required that condition code registers must be "shared by all processors;" (2) BIAX had identified the required "processor" and "condition code registers" in each shader; (3) although the identified processor in each shader could access all condition code registers within

---

[7] The District Court determined that "condition code register" and "condition storage" had slightly different meanings, but the differences are not material at this stage. Therefore, for ease of reading, BIAX will refer to both as "condition code registers."

*its* shader, that processor could not access all condition code registers in *different* shaders on the chip; (4) because a processor in one shader could not access condition code registers in every other shader, the condition code registers in the GPU chip failed to meet the "shared by all processors" limitation, and the chip therefore did not infringe the asserted claims. A1211-14. Nvidia made essentially the same argument in its summary judgment motion as to its NV 40 and NV 50 products. A1388. In making their arguments, Sony and Nvidia sidestepped BIAX's identification of each individual shader as the "computer" referenced in claim 1 of the '628 patent) or "information processing apparatus" referenced in claim 3 of the '313 patent. Therefore, they applied the claims as if the computer or information processing device was the entire GPU chip. They did so without contesting or even mentioning the issue or the conclusion of BIAX's expert that a VPE, fragment shader and streaming multiprocessor each met the agreed-upon definition of a "computer" or "instruction processing apparatus" referred to in the respective claims.

BIAX's straightforward response to the summary judgment motions was: (1) BIAX had consistently identified each individual shader as an infringing device; (2) each individual shader met the stipulated definition of "computer" in '628 patent claim 1 and "information processing device" in '313 patent claim 3; (3) both Sony and Nvidia admitted that each shader contained one or more processors that

12

accessed all condition code registers within that shader; (4) therefore, each shader met all the requirements of claim 1 of the '628 patent and claim 3 of the '313 patent, and (5) because each shader was an identified "computer" or "information processing device," the patents were infringed. A1286-87. BIAX argued that including more than one infringing device in the GPU chip did not prevent infringement under this Court's holding in *Suntiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327 (Fed. Cir. 1999) (hereafter, "*Suntiger*").

BIAX did not phrase its argument below by using the terms "computer" and information processing apparatus," but framed the same issue by referring to the fact that each shader contained a "first circuit" and "processor," which are subparts of the definition of "information processing apparatus." BIAX was also clear that each fragment shader was the accused infringing device. It then characterized Defendants' position that the "sharing" and "access to all" requirements must be met between shaders as attempting to add elements outside the accused devices. BIAX response to Sony's SJ Motion, pp A1281-87.    BIAX Response to Nvidia Motion for SJ, at A1469-70. The argument is the same: whether sharing was required within an accused device that contained all the elements of an information processing apparatus (or "computer") or whether sharing was required between the devices that BIAX identified as containing the requisite elements. BIAX's use of

13

"computer" before this Court is a form of shorthand that does not change the substance of what was argued below.

In its summary judgment order, the District Court met BIAX's argument that each shader was an identified infringing device that met the definition of "computer" and all the other limitations of the claims, with the following:

> "[t]he attempted isolation of a single processor element does not change the fact that any particular processor element in the accused chips is incapable of accessing all condition code registers and that any particular condition code register is not shared by all of the other processor elements which exist within the accused chips."

A1901. It is apparent that to reach this conclusion, the District Court determined the scope of "computer" and "information processing device" to apply only to the entire chip rather than any structure that otherwise met the agreed definition of "computer" and the uncontested definition of "instruction processing device."[8] Based on this never-before-expressed view of the scope, the District Court rejected BIAX's argument that each shader could be a separate infringing device and entered summary judgment against BIAX on all of BIAX's claims. A1904.

## VI.    THE FEE ORDER

---

[8] Because the arguments at this stage of the case do not depend on any differences between the terms "computer" and "instruction processing apparatus," and any such differences were not argued by Defendants on summary judgment, any such differences are not material at this stage of the case. Therefore BIAX will refer only to the term "computer" to avoid the necessity of repeating both terms.

Following the summary judgment order, Defendants moved for an award of fees and costs against BIAX under 35 U.S.C. § 285 and against Dorsey & Whitney under 28 U.S.C. § 1927. The District Court entered its Fee Order on March 30, 2013, subject to a review of the fees and costs. A1-17. The District Court found the case to be "exceptional" within § 285 based on its view that its Claim Construction Order and its order denying the Clarification Motion were unambiguous that a processor had to be capable of accessing all condition code registers (its "access to any" limitation) and that, in the case of multiple processors, all condition code registers had to be "shared by all." A11-13. Thus, even though BIAX's expert had opined that these limitations were met by each shader individually, the District Court concluded that once BIAX's expert conceded that the one or more processors in one shader did not access the condition code registers in all other shaders located *on a chip*, further litigation became objectively baseless. The court limited the award to the fees incurred after June 17, 2011, the date of the deposition of BIAX's expert Dr. Davidson, on the basis that BIAX, or at least its counsel, learned about the basic architecture of the accused devices at that point. *Id.* Fee Order, at A12.

The District Court also rejected BIAX's contention that the Protective Order, which deprived BIAX of access to the expert reports or depositions, the experts' conclusions, and all essential information about the Defendants' products,

15

prevented BIAX from "actually knowing" that its claims had purportedly become baseless. On that basis, the District Court held that BIAX had continued to litigate in subjective bad faith. A13-16. The District Court presumed that BIAX's outside counsel was able to discuss with BIAX the "implications" of the Claim Construction Order and the "bottom line conclusions" of its expert notwithstanding the Protective Order. A14-15. The District Court also found that even if BIAX did not have access to the information, it was bound by the actions of its counsel under principles of agency law.  A16.

In the Fee Order, the District Court declined to award fees against Dorsey, however, on the basis that such relief had been requested in the alternative to an award against BIAX. A16. On Defendants' motion for reconsideration of this denial, the District Court found that Dorsey had not "exceeded the bounds of zealous advocacy" and declined to reconsider its earlier decision.  A21-22.

## SUMMARY OF THE ARGUMENT

The District Court erred in finding the case exceptional within 35 U.S.C. § 285 on the basis that litigation after the expert reports became objectively baseless. BIAX's infringement theory was based on "shared" condition code registers *within* the "computer" identified in the patents. The summary judgment stage of the case was the first time that Defendants argued and the District Court determined that the "sharing" requirement for condition code registers is *between* all devices located

16

on the GPU chip even though each device separately met the definition of "computer." Thus, BIAX's argument was neither objectively baseless nor unreasonable until the District Court entered the Summary Judgment Order.

As discussed below, the District Court based its finding of bad faith solely on its determination that BIAX "actually knew" its claims were objectively baseless, i.e. the court did not find any basis for bad faith other than litigating a purportedly baseless case. Therefore this finding is not an independent basis for finding the case to be exceptional.

## STANDARD OF REVIEW

The District Court holding that the patent infringement action was objectively baseless (A11-13) and therefore was "exceptional" is reviewed for abuse of discretion. *Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744 (2014). The District Court's findings of fact in support of the exercise of its discretion are reviewed for clear error. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326 (Fed. Cir. 2005). "A finding of fact is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id, citing Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004).

"An abuse of discretion may be established under Federal Circuit law by

17

showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004).

## ARGUMENT

## I. THE DISTRICT COURT'S CONCLUSION THAT THIS CASE IS "EXCEPTIONAL" IS WRONG

The District Court's conclusion that this case is exceptional is wrong. Until its order granting summary judgment, the District Court gave no advance notice of its determination that the scope of the term "computer" in claim 1 of the '628 patent encompassed only the entire GPU chip and therefore would not be applied to an individual shader. Therefore BIAX did not know that the 'shared by all' limitation the court imposed would require sharing *between* "computers" when there is no such limitation in the patents. Until the order granting summary judgment, BIAX's argument based on sharing *within* the "computer" (i.e., each shader) was therefore reasonable, i.e. not so lacking in substantive strength as to be exceptional.

## A. THE STANDARD FOR AN AWARD UNDER § 285

A party may be entitled to an award of attorney's fees and costs if the court finds the case to be "exceptional." An "exceptional" case is one that stands out

from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. This determination is to be made on a case-by-case basis considering the totality of the circumstances. *Octane,* at 1754. A "nonexclusive" list of "factors," includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* n.6.

The District Court decided the case on the standard enunciated in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), that an award under § 285 required findings both of objective baselessness and of subjective bad faith. The court below found subjective bad faith based solely on its presumption that BIAX had been informed that its case was baseless or, even if it had not been so informed, that its counsel was its agent and BIAX was therefore bound by its counsel's decision to continue to litigate. The court made no other findings to support its determination of bad faith.

The question presented to this Court is whether this case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)." *Octane* at p.7.

19

### B.    BIAX'S ARGUMENT THAT EACH SHADER WAS AN IDENTIFIED INFRINGING DEVICE WAS NOT OBJECTIVELY BASELESS OR UNREASONABLE

The District Court granted summary judgment against BIAX because it determined for the first time that the scope of the accused device, namely each "computer," encompassed the entire GPU chip and not individual shaders located on the chip that also met the agreed definition of the term. Nothing prior to the order on summary judgment indicated that the District Court would do so.

### 1.    BIAX's Identification of the Accused Device as an Individual Shader was a Reasonable Construction of the Scope of "Computer"

Consistent with the Claim Construction Order, BIAX focused on claims 1 and 2 of the '628 patent and claim 3 of the '313 patent. Claim 1 of the '628 Patent reads in relevant part:

> A <u>computer</u> comprising:
> …
>> A condition code register file distinct from general-purpose register file, having a plurality of addressable condition code registers…
>> A processor element configured to execute instructions, including condition-setting instructions that each produce a condition code value for storage in one of said condition code registers…

A83 (emphasis added). According to this language, the first point of analysis is whether the device in question is a "computer." The parties had stipulated to the following definition of the term: "a device that receives, processes, and presents

data." Davidson Report at ¶ 95, A1530. The scope of the term, which was not addressed at claim construction, could be reasonably construed to apply to any particular structure that met the agreed definition. It was then reasonable to read the claim on any "computer" in which the required elements were found. Claim 1 neither references multiple processors nor multiple computers. Therefore, the claim language can be reasonably interpreted to reference a processor and multiple condition code registers only within the defined "computer." In turn, it was logical to identify the infringing accused device in terms of the claim language, namely as something that meets the definition of "computer," even if there were several such "computers" on a chip. This was a reasonable argument, i.e. neither objectively baseless nor exceptionally lacking in substantive strength.

In the case of a multi-processor device that meets the definition of "computer," the language could be reasonably interpreted to mean that the condition code registers in any particular device need only be shared by all the processors in that particular computer. Based on the definition of computer, BIAX made a straightforward argument: (1) each individual shader (and VPE or streaming multiprocessor) meets the agreed definition of a "computer;" (2) each shader contains one or more processors that access all condition code registers within that shader; (3) claim 1 and dependent claim 2 of the '628 patent covered a "computer" with one or more processors that could access all multiple condition

21

code registers within the computer; (4) therefore, each shader met all the requirements of claim 1 of the '628 patent; and (5) because each shader was an identified   "computer," the patents were infringed. BIAX argued further that adding more individual computers, i.e. shaders, to a chip did not remove either each shader or the chip from the reach of the claims because the entirety of claim 1 read on any part of the chip that met the entire definition of "computer," and adding more devices computers on the chip, each of which also met all of the claim limitations, simply meant that claim 1 of the '628 Patent read on more than one identified accused device.

### 2.    The Record Prior to the Summary Judgment Order did not Preclude BIAX's Argument

BIAX's argument was consistent with the Claim Construction Order's requirement that the one or more processors in a computer be able to access "any code condition register" because the District Court had not construed the scope of "computer" to apply only to the entire GPU chip. Therefore, under BIAX's argument about the scope of "computer," the one or more processors in a particular computer/shader had "access to any" condition code register in the computer/shader without reference to any other computer/shader.

By focusing in its summary judgment order solely on the entire chip as the "accused device," the District Court determined *sub silentio* for the first to

construe the term "computer" to identify the entire GPU chip. Issues of scope are for the court to determine and are typically addressed at the claim construction stage. *See, e.g. O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). Here, however, no party requested that the District Court determine the scope of the term "computer" at the claim construction stage. Sony and Nvidia never explicitly addressed the scope of the term at any stage.

The District Court had discretion to engage in a rolling claim construction, in which the court may revisit and alter its interpretation of the claim terms as its understanding of the technology evolves, *see Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005), or to supplement its orders to address claim construction issues not specifically resolved. A party is entitled to present new or additional arguments in support of the scope of its claim construction at any time during the case. *O2 Micro Int'l Ltd.*, 521 F.3d at 1359. Because the scope of the accused device, i.e. "computer," remained undetermined until the summary judgment order, it was reasonable for BIAX to contend that the scope of the accused device was not the entire chip, but the individual shaders that each met the definition of a "computer."

The District Court never addressed why it was unreasonable for BIAX to identify the accused device as each shader that met the definition of "computer." At no time did the District Court ever address the agreed definition of "computer" or the conclusion of BIAX's expert Dr. Davidson that each shader was a computer within the agreed definition (and neither did either Sony or Nvidia). Instead, the District Court decided the case based on its unstated presumption about the scope of the term, as illustrated by its statement that

> "the *attempted isolation of the single processor element* does not change the fact that any particular processor element in the *accused chips* is incapable of accessing all condition code registers and that any particular condition code register is not shared by all of the other processor elements which exist *within the accused chips*."

Summary Judgment Order, A1901 (emphasis added).  It is in this order that the District Court for the first time defined the "accused" devices as the "chip," that is, it identified the entire GPU chip as the "computer."

It is telling that, in its language, the District Court refers to the "chips" as the devices having been accused, when BIAX had specifically accused the individual computer/shaders. A1253-1277. The District Court never discusses this point and never mentions the definition of "computer."

It is also telling that the court describes BIAX's argument, that each shader was a computer within the meaning of claim 1, as an "*attempted isolation* of a single *processor element.*" The District Court's focus on the processor, which was

only one part of the "computer" defined by claim 1, indicates it missed the reasonableness of BIAX's argument. BIAX's argument, that each shader meets the definition of computer, does have the effect of "isolating" the processor elements in each such computer/shader from the processors in other computer/shaders on the chip; however that is the natural result of applying the claims to the "computer" as stated in the claim and then showing that each shader met the term's definition. The identification of each distinct shader as a "computer" was not artificial or frivolous; rather it flowed from the specific language of claim 1 of the 628 patent.

This is the crux of the matter before this Court. The question is not whether the District Court erred when it viewed the scope of "computer" to be the entire chip in deciding summary judgment; that issue is foreclosed. Rather, the question is whether BIAX's argument to the contrary was unreasonable. What is significant about the summary judgment order for purposes of this appeal is its lack of any discussion as to why the accused device was necessarily the entire chip, notwithstanding the language of the patent that, by addressing the claims in terms of a "computer," reasonably makes any device that meets the definition an appropriate accused device. Instead, the District Court dispenses with BIAX's argument by declaring that the BIAX was attempting to isolate the processors, but without ever explaining why the "attempted isolation" was unreasonable or even

legally incorrect in light of the language of the claim or the Claims Construction Order.

In the Fee Order, the District Court quotes from its summary judgment order to support its finding that BIAX was presenting an argument that was foreclosed by the Claim Construction Order, as follows:

> BIAX contends that the patents do not require that all processor elements be able to access all condition code registers and condition storage. The Court, however, has already unambiguously ruled that they do. . . . In light of the foregoing constructions, the Court stated there was "little risk that plaintiff will attempt to argue at trial that processor elements are not able to access any condition code registers or condition storage locations." Docket No. 455 at 2. Yet, that is the very argument BIAX asserts in response to defendants' motions.

Fee Order, at A7. The first statement, "BIAX contends that the patents do not require that all processor elements be able to access all condition code registers and condition storage," is only half true. The correct statement would be "BIAX contends that the patents require that all processor elements be able to access all condition code registers and condition storage <u>only within any device that meets the definition of a computer or information processing apparatus</u>." Within any shader, the requirement of "access to any" was in fact met. Similarly, the court's statement that it "has already unambiguously ruled that" "all processor elements be able to access all condition code registers and condition storage" is incomplete. It is noteworthy that even the court's quoted sentence does not address the same key

question: whether the accused device containing the processor elements, condition code registers and condition storage could be each device on a chip that met the requirements of a computer as did each individual shader (thus requiring sharing only within the shader), or whether the accused device was legally required to be the entire chip (thus requiring sharing between shaders). Nothing in these quotes or anything else in the record below before the summary judgment order tells BIAX that the District Court had determined that the device had to be the entire chip.

The District Court held that since claim 1 of the '628 patent referred to a single processor, it was unnecessary to determine if the "processor element" in claim 1 was limited to the singular, stating only that "[i]n the event there is only one processor element, that processor element is capable of accessing any of the condition code registers for storing condition code values. In that event, the register is not shared by all processor elements because there would be only one." Claim Construction Order at A1156-57. In the context of claims construction, this statement could be reasonably understood to mean that a device that met the agreed definition for a computer, i.e. a shader, and contained a single processor did not need to be subject to a "sharing" requirement.[9] The District Court noted that upon the introduction of additional processors, the "shared by all" concept would apply.

9 Since a condition code register only serves a purpose in connection with a processor, then by definition, all registers will be accessible by the processor in a single processor device.

In the context of claim 1, the statement could reasonably be understood to mean the introduction of additional processors in the "computer" to which claim 1 specifically refers, i.e. in this case, an individual shader. The District Court's sharing requirement could reasonably be understood to mean sharing of all condition code registers by multiple processors within the designated computer/shader.

If, however, the assumption is that the "computer" is the entire chip, then the District Court's "shared by all" requirement in its Claim Construction Order would require each processor in one shader to share the condition code registers in every other shader on the chip. Based on this assumption, the District Court is correct in stating that its "shared by all" claim construction was unambiguous. The problem is that the operative assumption - that only the entire chip should be regarded as the accused device or "computer" – was never discussed by the court or the Defendants until the summary judgment motions. As noted, even then, it was not discussed with any specificity.

The District Court did not address the identification of the "accused device" in its Claim Construction Order. The Claim Construction Order does not define the accused device, never uses the words "chip," "graphics processing unit" or "GPU," and never references the agreed definition of the term "computer." Because claims construction occurs in a vacuum without reference to the accused products and

methods, *Neomagic Corp. v. Trident Microsystems*, 287 F.3d 1062, 1074 (Fed. Cir. 2002), nothing in the claim construction record refers to shaders, chips or GPUs or how they relate to the defined term "computer." Rather, "shaders," "chips" and "GPU" are product terms that do not appear in the claims. If the Defendants had wanted to restrict the scope of the term "computer" to the GPU chip, they could have done so at claim construction. If, at that point, the District Court had construed "computer" or the accused device to be the entire chip and the chip contained multiple shaders, then this case would have been very different. But the District Court did not address the point until its summary judgment order. Because nothing in the record prior to the summary judgment order restricted the scope of the term or required the "accused device" to be the entire GPU, BIAX was not pursuing unreasonable claims, much less claims that could be regarded as objectively baseless.

The undisputed record below therefore leaves one with a definite and firm conviction that the court below committed a clear error of judgment in reaching the conclusion in the Fee Order that BIAX had pressed an argument precluded by its Claims Construction Order or an argument that was so lacking substantive strength as to make the case exceptional.

Defendants argued below that the District Court was clear that claim 1 of the '628 Patent required a single processor to be able to access any of the condition

code registers in the "accused device," and that upon introduction of additional processors, all the processors had to be able to access all condition code registers. Defendants then contended that because the one or more processors in one shader were not able to access the condition code registers in any other shader, it was obvious that the "accused device" did not infringe. The Defendants' arguments beg the central question: whether the accused device was each shader or only the whole chip. The requirement for sharing between shaders is only "obvious" if one first presumes that the accused device is the entire chip. Absent clarity on this latter point, the result is not obvious at all.[10] The Claim Construction Order ostensibly brought clarity to the issue of sharing between processors and condition code registers; it said nothing about whether the identified accused device could reasonably be considered to be each computer/shader within the chip or was legally required to be the entire chip. Until the summary judgment order, it was not unreasonable for BIAX to continue to litigate this issue.

### 3. Biax Had Admissible Evidence To Support The Argument That Each Shader Was A "Computer"

BIAX's contentions were supported by the facts. BIAX presented admissible evidence that a shader met the requirements of the agreed definition of a "computer." BIAX's expert opined that a shader met the requirements of the

---

[10]  The fact that Defendants waited a year after the Claims Construction Order to move for summary judgment belies the contention that the result was obvious.

agreed definition of a "computer." Davidson Report, A1530-31 at ¶¶ 94-98; *see also* A-1499-1500 at ¶¶ 24-25 The Defendants never debated or discussed the point in the proceedings below. A128-261. Similarly, Defendants did not dispute that a shader met all of the remaining requirements of claim 1 of the '628 patent. Sony's Motion for Summary Judgment, ¶¶ 1-7, A1208 ("Statement of Undisputed Material Facts"); BIAX's Response to Sony's Motion for Summary Judgment, ¶¶ 1-19, 1-9, A1281-84 ("Response to Statement of Undisputed Material Facts" and "Statement of Additional Disputed Facts"); Sony's Reply in Support of Motion for Summary Judgment, ¶¶ 1-3, A1325 ("Response Concerning Disputed Facts"); Nvidia Corrected Motion for Summary Judgment of Non-Infringement, ¶¶ 1-19, A1444-47 ("Statement of Undisputed Material Facts"); BIAX Response to Nvidia's Motion for Summary Judgment, at ¶¶ 1-19, 1-7, A1463-65 ("Response to Statement of Undisputed Material Facts" and "Statement of Additional Disputed Facts") Davidson Report at ¶¶ 94-110 & Ex. 7 (claims chart), A1530-36, 4660-67).

The District Court quotes Dr. Davidson's testimony to support its finding that Dr. Davidson opined that the "sharing" requirements imposed under the Claims Construction Order were clearly not met. The testimony in question was:

Q. In forming your infringement opinions with respect to the '628 patent, did you apply a requirement that the processor element is capable of accessing any of the condition code registers? . . .
A. No, I did not apply that.
***

31

Q. In forming your infringement opinions for the '313 patent, did you apply a requirement that condition code storage locations are shared by all processor elements?

A. By all processor elements in the RSX? No.

***

Q. Do we agree, then, that if there is a requirement that processor elements need to access any of the condition code registers or condition code storage locations in the chip, then RSX doesn't infringe?

A. It doesn't infringe that requirement, no. But there is no such requirement.

A5.    Counsel's last question is phrased in terms of access to all "locations in the chip," not all locations in any particular shader. Dr. Davidson's response is explicit: if the access requirement applied to all condition code registers or condition code storage locations in the chip, then the RSX (the entire GPU chip) did not infringe. But he then stated "there is no such requirement" because, as he had opined in his expert report, the accused device was not the whole chip, but any device on the chip that met the definition of computer. Davidson Report at ¶¶ 50, 53, 55, 68-82, 94-110 & Ex. 7, A1512, 1513-14, 1521-26, 1530-36, 1644-51.

While Dr. Davidson acknowledged that the processor in one shader did not access the condition code registers in other shaders, he opined that a shader met both the complete definition of a "computer" as stated in claim 1 and all the limitations of claim 1. He therefore concluded that each accused computer/shader infringed. The quoted testimony illustrates BIAX's point about the District Court's error: even at the time of the deposition, the scope of the accused device had not been determined to be the entire chip. BIAX had identified each shader as the infringing device,

each shader was a "computer" that met all of the limitations of claim 1, and nothing in the record ever indicated that this argument had been precluded.

The District Court apparently thought it was clear that the accused device could only be the entire chip. This unstated proposition is essential to its ruling. But the District Court never cites to anything prior to its summary judgment order that gave BIAX any notice of its conclusion because there was no such notice. The District Court never even cites any support for its conclusion that the scope of the device was legally required to be the entire chip. Therefore this Court should reach a definite and firm conviction that the court below committed a clear error of judgment in its conclusion.

### 4. BIAX'S Argument Under *Suntiger* Was Reasonable

The District Court also rejected BIAX's argument based on *Suntiger*. That argument was, however, a logical extension of its argument outlined above. In *Suntiger*, the accused device was a lens. *Suntiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327 (Fed. Cir. 1999). As quoted by this Court, the patent read: "A <u>lens</u> worn in front of the eyes by humans." *Id.* at 1331 (emphasis in original). In BIAX's case, the accused device was a computer, i.e. a shader. Claim 1 of the '628 patent reads "1. a <u>computer</u> comprised of the following:…" A83 (emphasis added). In *Suntiger*, this Court reversed the lower court because all the limitations of the claim were met on a portion of the lens, holding that a claim need

not read on the entirety of the device. *Suntiger* at 1336-37. Similarly, BIAX argued that a part of the chip, namely a shader, met all the limitations of claim 1, including the definition of a "computer," and therefore the entirety of the claim read on a part of the device.

This argument was neither unreasonable nor objectively baseless. In *Suntiger*, the accused device was the entire lens, not the "right bottom" of the lens. *Id.* Nonetheless this Court held that infringement by the right bottom of the lens would be sufficient. In BIAX's case, even if one assumes that the proper identified accused device is the entire chip (which as noted above arguably requires ignoring the agreed definition of "computer"), the entirety of claim 1 of the '628 patent read on a part of the chip, namely a single shader. Just as the addition of a coating on part of the lens did not take the rest of the lens out of the claim in *Suntiger*, BIAX reasonably contended that the addition of other computer/shaders in the chip did not take the discrete part of the chip that met all the claim limitations out of claim 1 of the '628 patent. The District Court rejected the argument in its summary judgment order based on its determination that the entire chip must meet the limitations of claim 1, not just each computer/shader.  BIAX's argument to the contrary, however, was not an unreasonable application of the holding in *Suntiger*.

In making its argument, BIAX was not ignoring this Court's holding in *Suntiger* that "[i]f a claim is specific as to the number of elements and the addition

of an element eliminates an inherent feature of the claim, then that additional element will prevent a finding of literal infringement." *Id.* at 1336. From BIAX's perspective, the additional elements had to be added to the "computer" that it had identified as the infringing device, namely an individual shader. BIAX response to Sony's SJ Motion, A1286-87. BIAX Response to Nvidia Motion for SJ at A1469-70-9. The District Court assumed, without any discussion of its reasoning, that the addition of other condition code registers (or other processors) in the chip eliminated an inherent feature of the claim, namely the "access to any" condition code register requirement (or the supposedly unambiguous "shared by all" limitation) imposed by its Claim Construction Order. In so doing, the District Court for the first time held that the accused device had to be the entire chip – in short, it redefined the scope of the term "computer." It would be as if the court in *Suntiger* had determined to redefine the scope of the term "lens" to be the entire sunglasses. Whereas the redefinition of scope here is now beyond question, it was not accomplished until the District Court ruled on summary judgment. Until this ruling at the end of the case, BIAX's argument was an appropriate "new or additional argument in support of the scope of its claim construction" and a reasonable application of *Suntiger.*

Even though the overall test under § 285 has changed, this Court's observation is still true that

> [a]n infringement action does not become unreasonable in terms of [§ 285]

35

if the infringement can reasonably be disputed. Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith."

*Brooks Furniture*, 393 F.3d at 1384.

Once the District Court entered its summary judgment order, it became apparent that the District Court intended something else, but until then BIAX's argument was a reasonable reading of the District Court's orders. *Id.*

## C.    THE DISTRICT COURT'S FINDING OF BAD FAITH IS BASED SOLELY ON ITS FINDING OF OBJECTIVE BASELESSNESS

Under *Octane*, a finding of subjective bad faith is no longer necessary, but such a finding may be an independent ground for an award under § 285. *Octane*, at 1758. Therefore, the District Court's finding of subjective bad faith must be addressed. The Defendants argued that BIAX acted in bad faith on the basis that BIAX supposedly persisted in advancing an unfounded argument. Fees Motion, at A2115. Whether BIAX's theory was unreasonable, rather than merely unsuccessful, is addressed above.

The Defendants also argued (and the District Court found) that BIAX relied on an expert "who admitted at deposition that the relevant requirements were not satisfied." Fees Motion, at 2116. As BIAX has demonstrated, this contention is clearly erroneous. The expert testified that the relevant requirements were not met only in response to a question that assumed that the scope of the accused device

had been determined to be the entire chip rather than any device on the chip found to meet the agreed definition of "computer." Since this finding relies entirely on whether the accused device was properly each shader or was required to be the entire chip, it does not provide an independent ground for a conclusion that the case is exceptional.

### D. THE EFFECT OF THE PROTECTIVE ORDER MUST BE CONSIDERED IN THE TOTALITY OF CIRCUMSTANCES

#### 1. The Protective Order Kept BIAX from the Essential Information.

This case presents a situation in which this Court should determine whether the particular circumstances provide a compelling reason not to award fees even if it concluded that BIAX's argument to the trial court was lacking in substantive strength.

As a result of the Protective Order in this case, most of the discovery received from Defendants bore an Attorneys' Eyes Only designation, including product manuals and the RTL code that explain the manner in which Defendants' devices function and how they process data. This information was *only* reviewable by BIAX's outside counsel and its experts. BIAX retained exceptionally qualified experts like Dr. Davidson to study the accused products and millions of lines of code, but BIAX itself was unable to review that work, the resulting infringement contentions, the expert's reports and conclusions, or its experts' depositions. BIAX

could not attend depositions, and its expert was prohibited from sharing his findings or conclusions with BIAX. BIAX was under similar restrictions with respect to Defendants' experts and their reports, conclusions and testimony.

Pleadings on issues ranging from infringement contentions to the summary judgment motions were all designated Attorneys' Eyes Only. In all, more than 220 pleadings in the case, virtually its entire substantive core, were filed under seal because they depended, at least in part, on matters that could not be and were not disclosed to BIAX under the Protective Order. A128-261. Even the Fees Motion and its supporting exhibits were filed under seal and designated Attorneys' Eyes Only. A241-244. At the request of counsel, Defendants relaxed the restriction only as to the motion's text.

Patent infringement analysis entails two steps: determining the meaning and scope of the patent claims; and comparing the properly construed claims to the device accused of infringing. *Markman v*, 52 F.3d at 976. BIAX was not only denied access to the infringement contentions, it was not even privy to the identity, number or functionality of the accused products or devices. As a result, BIAX could not compare the accused products against the parameters of the Claim Construction Order (even if one could assume that this order addressed the scope of the accused device) and direct its litigation decisions accordingly.

In the Fees Motion, Defendants contended that BIAX was given access to

the RTL code and manuals for the accused products, obtained Dr. Davidson's expert reports and knew his deposition testimony, produced claim charts specifying the bases for BIAX's infringement assertions, and received information about the number and identification of accused products. A2108-2110. The contention is wrong: because of the Protective Order, BIAX's outside counsel and its experts had all of the foregoing, but BIAX itself, its management and its general counsel were barred from seeing this information. Nonetheless, Defendants used the argument that *BIAX* had the information in order to contend that BIAX actually knew it had no viable infringement theory. A2108-10. By highlighting the importance of that information, Defendants also highlight its importance for the party making any decision about the viability of its infringement theories. BIAX was denied this important information, and thus BIAX personnel could not instruct its expert or its counsel to pursue any particular theory or discuss what the expert found or concluded. BIAX was never told and never saw the excerpt of Dr. Davidson's testimony that the District Court quoted in its Fee Order until its personnel were permitted to review that order two years after Dr. Davidson's deposition. In short, BIAX had no ability to conduct and direct the litigation in a meaningful way.

The District Court incorrectly found that BIAX's internal representatives were able to "review the type of technical information subject to the Protective

Order and direct outside counsel's litigation strategy accordingly." A15. The court

cited the basis for this finding as footnote 2 on page 2 of BIAX's Supplemental

Response to the Fees Motion. On this point, the District Court committed clear and

reversible error. The footnote states:

> BIAX has a limited number of internal representatives able to evaluate
> and direct the company's litigation positions and thereby frame the
> Company's intent.  BIAX Motion for Entry of a Protective Order, pp.
> 3-5 [Docket No. 75].  None of those individuals were allowed access
> to the Attorneys' Eyes Only information in the case.

What BIAX pointed out in this footnote was that BIAX had limited internal

personnel, i.e. it was not a big organization where confidentiality might be an

issue, but that even its limited personnel were not permitted to see this type of

technical information (or any technical information for that matter). A2122.

In its Fee Order, the District Court dismissed BIAX's argument based on the

effect of the Protective Order, stating

> BIAX does not explain, however, why the Protective Order
> prevented outside counsel from discussing with corporate counsel
> the implications of the Court's claim construction or from alerting
> corporate counsel about the bottom line conclusions reached by Dr.
> Davidson regarding whether the accused devices met the "shared
> access" requirement.

A14-15. The strict language of the Protective Order provides that supposedly

missing explanation: nothing in the Protective Order permitted these

communications. BIAX did not learn of the Dr. Davidson's testimony as quoted by

the District Court until the Fee Order.

The District Court dismissed BIAX's opposition to the broad prohibition sought by Defendants based in part on its contention that "BIAX cannot simultaneously assert that it had a reasonable basis for maintaining the litigation and that it had no way of knowing whether or not it had a reasonable basis for maintaining its litigation." Fee Order at A15 (citations omitted). In this regard, the District Court was contradicting itself. BIAX opposed the breadth of the Protective Order on the basis that its own personnel would not be able to evaluate the case on their own and guide the litigation. A361. The District Court however was of the view that "Defendant's Protective Order would not deny BIAX access altogether; rather, the individuals who have been primarily active in the litigation – here, outside counsel – would be able to review the documents." A565. Thus, BIAX was entitled to presume that if its attorneys and experts with complete access to the information had concluded that continuing to litigate the case was not baseless, it did in fact have reasonable grounds to do so, even though it could not have access to the information. Having told BIAX it did not need the information because it could rely on its professionals, the District Court erred in then blaming BIAX for doing just that.

The District Court also never explains the basis for its presumption that the "implications" of the Claim Construction Order could be meaningfully discussed

with BIAX personnel in relation to the accused products. The Protective Order does not contain any exceptions for "implications" or "bottom line conclusions." In a typical case, the patent holder has access to the information about the accused device and can therefore apply the claims construction to the patent claims, and the patent claims to the device, to make a determination about the viability of any infringement theory. In those cases, the client plays a primary role if it is obvious that the accused device does not infringe. The Protective Order, however, removes this case from the realm of the typical by removing the basis for the inference that BIAX had the information required to make such a determination.

If, by "implications," the District Court meant that it could presume without any evidence that counsel had informed BIAX that counsel had concluded that the accused devices did not infringe, no evidence indicates that the Dorsey firm drew such a conclusion. Counsel's conduct of the litigation after the Claim Construction Order indicates the opposite. Moreover, the District Court found that Dorsey had not overstepped the bounds of "zealous advocacy." Implicit in this holding is that counsel did not proceed without a "plausible basis," for the claims it continued to assert. *See Miera v. Dairyland Ins., Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).[11]

---

[11] Given that the standard under § 1927 is comparable to objective baselessness, the District Court's finding that BIAX's counsel did not press claims that were "without plausible basis" (the § 1927 standard under *Miera v. Dairyland Ins., Co.*, 143 F 3d. at 1339*)*, the District Court's finding that BIAX "actually knew" its

The District Court also held that BIAX should be held liable for the conduct of its outside counsel based agency principles. This holding cannot be squared with the District Court's specific finding that BIAX's outside counsel acted within the permissible bounds of advocacy. Thus, applying agency principles should produce the opposite result: if the agent was found to have not acted wrongfully, the principal did not act wrongfully either.[12]

## 2. **The Protective Order Prevents this Case from Being Exceptional**

In evaluating whether a case is exceptional, the courts are now mandated to consider the totality of the circumstances. *Octane* at p. 8. The consideration is an exercise of *equitable* discretion. *Id*. In citing to this Court's opinion in *Kilopass Technology, Inc.* v. *Sidense Corp.*, 738 F. 3d 1302 (Fed Cir. 2013), the Supreme Court endorsed the view that a finding of exceptionality based on objective baselessness could be overcome if the circumstances as a whole demonstrated "a

claims were objectively baseless is anomalous.

[12] The District Court's agency analysis is also incomplete. The District Court cited to general agency law principles under which a principal *may* be liable for its agent's acts, *see* Fee Order at A16, but failed to apply the fundamental limitation against imputing knowledge to a principal regarding facts which its agent cannot disclose. *See* Restatement (Third) of Agency § 5.03(b) (an agent's knowledge is imputed to its principal "unless the agent . . . (b) is subject to a duty to another not to disclose the fact to the principal."); *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 106 (Fed. Cir. 2009) (quoting Restatement (Third) of Agency § 503 for the rule that "not all facts known by an agent are imputed to the principal.").

lack of recklessness" on the part of the plaintiff. *Octane*, at 1754 n.4. As a result of the Protective Order, BIAX itself could not determine whether it was acting recklessly or not. That decision was left to its counsel. More importantly, the District Court found that BIAX's counsel did not act recklessly.

When the patent holder has access to the information necessary to evaluate the claims on an ongoing basis, the patent holder is in a position to determine the viability of the infringement claims on its own, and a claim of reliance on counsel should then carry limited or no weight. Where, however, the information necessary to the evaluation is withheld from the patent holder over its protest because it is instructed to rely on its professionals for the evaluation, the patent holder cannot be deemed reckless in so doing. Therefore, even if the infringement argument in this matter could be found to be exceptionally lacking in substantive strength, the facts demonstrate a lack of recklessness that counterbalances any such finding.

Considerations of deterrence are also not applicable when the Defendants successfully kept BIAX from being able to make an independent decision, because there is no action by BIAX to deter.

The Protective Order was entered at the insistence of Defendants and over BIAX's objection, thus preventing BIAX itself from being able to determine the substantive strength of its claims. The Defendants nonetheless seek compensation from BIAX for supposedly failing to properly evaluate its claims on an ongoing

basis. Under these circumstances, under the revised test of *Octane*, the court should determine that the Defendants are estopped from pursuing their § 285 claims.

## CONCLUSION

The language of the patents in suit specifically refers to the claims as applying to a "computer" or an "information processing apparatus." The accused devices in this suit were the individual shaders on the Defendants' chips. It was uncontested that these devices met the agreed definition of computer or the definition of information processing device and that they otherwise met all the claims requirements. The District Court's conclusion that BIAX's argument was objectively baseless rests on the court's presumption about the scope of these terms. The accused devices only failed the "shared by all" and "access to any" requirements of the claims if the accused device, i.e. the computer or information processing apparatus, was required to be the entire chip, notwithstanding the plain language of the patents. The record is clear that this determination of scope was left open and undecided (in fact not even contested) until the order on summary judgment. The District Court's failure to recognize that BIAX's argument was therefore not precluded by its orders on claim construction (or by anything else) is a clear error of judgment in weighing the relevant factors or exercising its discretion based on an error of law or clearly erroneous fact finding.

The Protective Order denied BIAX access to any of the information that

would permit BIAX to evaluate its claims as the case evolved. The District Court's view that BIAX could be assumed to have access to enough information to make a decision presumes a violation of the Protective Order. BIAX should not be held liable for continuing to litigate a case it had no ability to guide due to a Protective Order entered at the insistence of Defendants and over its objection.

## RELIEF REQUESTED

BIAX respectfully requests that this Court reverse the District Court's Fee Order.

/s/ Christian C. Onsager
Christian C. Onsager, CBN 06889
Andrew D. Johnson, CBN 36879
Onsager | Guyerson | Fletcher | Johnson LLC
1801 Broadway, Suite 900
Denver, Colorado 80202
Ph: (303) 512-1123
consager@ogfj-law.com
ajohnson@ogfj-law.com

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

In accordance with Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 11,432 words. I relied on my Microsoft Word word processing program to obtain this count.

/s/ Christian C. Onsager
Christian C. Onsager, CBN 06889
Onsager | Guyerson | Fletcher | Johnson LLC
1801 Broadway, Suite 900
Denver, Colorado 80202
Ph: (303) 512-1123
consager@ogfj-law.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 29, 2015, the following document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel below and all counsel of record who have been deemed to have consented to service via the CM/ECF system.

Christopher R. Ottenweller,
Direct: 650-614-7400
Email: cottenweller@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Alex V. Chachkes, -
Direct: 212-506-5000
Email: achachkes@orrick.com
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019

Indra Neel Chatterjee, Esq.,
Direct: 650-614-7400
Email: nchatterjee@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Mark S. Davies, Esq., -
Email: mark.davies@orrick.com
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005

Donald E. Daybell
Direct: 949-567-6700
Email: ddaybell@orrick.com
Orrick, Herrington & Sutcliffe, LLP
Suite 1100
2050 Main Street
Irvine, CA 92614

Christina Marie Von der Ahe, Attorney
Direct: 949-852-7741
Email: cvonderahe@orrick.com
Orrick, Herrington & Sutcliffe, LLP
2050 Main Street
Irvine, CA 92614

Brian P. Goldman
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105-2669


Attorneys for NVIDIA Corporation

David Rokach, Attorney
Direct: 312-862-3169
Email: david.rokach@kirkland.com
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

Attorneys for Sony Computer Entertainment America, Inc.
and Sony Electronics Inc.

Peter M. Lancaster
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498

Attorneys for Dorsey & Whitney, LLP

/s/ Christian C. Onsager
Christian C. Onsager
